Daniel L. Balsam (State Bar No. 260423)
THE LAW OFFICES OF DANIEL BALSAM
3145 Geary Blvd. #225
San Francisco, CA 94118
Phone: (415) 869-2873
Fax: (415) 869-2873

Richard M. Garbarini (Admitted *Pro Hac Vice*)
GARBARINI LAW GROUP P.C.
501 Fifth Ave, Suite 1708
New York, New York
Phone: (212) 300-5853
Fax: (888) 265-7054

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ROBERT BADELLA, individually and on behalf of all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DENIRO MARKETING LLC, a California limited liability company, *et al*,<br><br>Defendants. | Case No. 3:10-CV-03908 (CRB)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS MODENA AND DELTABREEZE'S MOTION TO DISMISS FOR LACK OF JURISDICTION**<br><br>Hon. Charles R. Breyer |

[Caption Only]

# TABLE OF CONTENTS

Table of Contents ..... ii

Table of Authorities ..... iii

Summary of Argument ..... v

I. Preliminary Statement ..... 1

II. Argument ..... 2

A. Standard of Review ..... 2

B. Minimum Contacts for Internet-Based Business ..... 3

C. Pendant Personal Jurisdiction Under RICO ..... 8

D. Personal Jurisdiction State-Law Claims ..... 8

III. Conclusion ..... 15

# TABLE OF AUTHORITIES

## Statues and Rules

18 U.S.C. § 1965 ........................................ 2

Fed.R.Civ.P. 12(b)(2) ........................................ 2

Cal. Code Civ. Proc. § 410.10 ........................................ 9

## Cases

*Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174 (9th Cir. 2004) ........................................ *passim*

*Allstar Marketing Group, LLC v. Your Store Online, LLC*, 666 F.Supp. 1109 (C.D.Cal. 2009) ........................................ 13

*Am. Auto. Ass'n, Inc.v. Darba Enters., Inc.*, 2009 WL 1066506 (N.D.Cal. 2009) ........................................ 3

*Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc.*, 1 F.3d 848 (9th Cir. 1993) ........................................ 9, 11

*AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586 (9th Cir. 1996) ........................................ 2

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082 (9th Cir. 2000) ........................................ 2, 9, 10

*Coastal Video Communications Corp. v. Staywell Corp.*, 59 F. Supp. 2d 562 (E.D. Va. 1999) ........................................ 10

*Core-Vent Corp. v. Nobel Indus.*, 11 F.3d 1482 (9th Cir. 1993) ........................................ 14

*Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir.1997) ........................................ 3, 12

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280 (9th Cir. 1977) ........................................ 8

*Gates Learjet Corp. v. Jensen*, 743 F.2d 1325 (9th Cir. 1984) ........................................ 9

## TABLE OF AUTHORITIES (cont.)

**Cases (cont.)**

*Gordy v. Daily News, L.P.*,
95 F.3d 829 (9th Cir. 1996) .....12

*Gray & Co. v. Firstenberg Mach. Co.*,
913 F.2d 758 (9th Cir. 1990) .....12

*Haisten v. Grass Valley Medical Reimbursement Fund Ltd.*,
784 F.2d 1392, 1397 (9th Cir. 1986) .....12

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984).....2

*Panavision Int'l v. Toeppen*,
141 F.3d 1316 (9th Cir. 1998) ..... *passim*

*Quigley v. Guvera IP Pty Ltd.*,
2010 WL 5300867 (N.D.Cal.2010) .....3

*Revell v. Lidov*,
317 F.3d 467 (9th Cir. 2002) .....10

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .....12, 13

*Stomp, Inc. v. NeatO, LLC*,
61 F.Supp.2d 1074 (C.D.Cal.1999) .....12, 13

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
952 F.Supp. 1119 (W.D.Pa. 1997).....9, 10, 12

## SUMMARY OF ARGUMENT

The moving Defendants, Deltabreeze Holdings Ltd. and Modena Marketing Inc., own and operate fully interactive commercial websites hosted on computer servers located in the State of California through which they routinely do volumes of business with Californians, as part of the alleged AmateurMatch scheme to defraud members of the public.

Modena has at times relevant to the Complaint owned and operated the primary domain name, AmateurMatch.com, and other AmateurMatch websites. Deltabreeze owns hundreds of domains and operates numerous AmateurMatch websites including, but not limited to, amateurmatch.net, romancer.net, inmatch.com, and maturematch.com. All of these websites are hosted on a computer or computers sharing the same Internet Protocol address corresponding to a location in California and share a common "backend database" also located in California as an instrumentality to carry out the AmateurMatch scheme.

"California permits the exercise of personal jurisdiction to the full extent permitted by due process." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). The moving Defendants have sufficient contacts to California, out of which the claims alleged in this action arise, to subject them to specific personal jurisdiction here at a minimum.

Even under the heightened standard applied to general personal jurisdiction, their "consistent and substantial pattern of business relations" approximates physical presence and is sufficient to confer jurisdiction. There is nothing "random, fortuitous, or attenuated" about subjecting the moving Defendants to personal jurisdiction here, as they have deliberately and purposefully availed itself, on a very large scale, of the benefits of doing business in California.

## I. PRELIMARY STATEMENT

This lawsuit is about a massive RICO Conspiracy perpetrated and coordinated by each of the Defendants, including the Internet based companies MODENA and DELTABREEZE; each of whom plays an integral role. The Scheme involves dozens of highly interactive commercial websites, which often change ownership among the Defendants to conceal the involvement of the individual Defendants at any given time. The one unifying factor is defendant HENNING who is the principal of each of the Defendants including MODENA and DELTABREEZE.

MODENA and DELTABREEZE do not contest service, which was properly made pursuant to the Hague Convention. Instead, they argue that they are either not involved in the Scheme, or have no involvement in the operative facts. Both of these contentions are swept aside by the overwhelming facts as pled by Plaintiffs.

Plaintiffs proffer that the Complaint is replete with sufficient jurisdictional allegations pertaining to MODENA and DELTABREEZE. Each is an Internet-based business that conducts systematic and continuous business in the State of California, and within this Judicial District, and each is a key actor and plays an integral role in RICO Conspiracy.

Unquestionably, the Complaint alleges that Defendants DELTABREEZE and MODENA own and operate spam, Dating, Payment, and WebCam Girl websites which are integral to the RICO Conspiracy. Moreover, Plaintiffs have specifically alleged MODENA and DELTABREEZE provided the instrumentality for payments to the Enterprise, and in fact accepted those payments. Their acts including money laundering and device fraud, which were essential and necessary functions for the Enterprise in furtherance of the Scheme to Defraud.

Importantly, while these companies are theoretically "non-resident foreign companies" the websites and instrumentality of their activities reside on computer servers located in the State

of California. The only question at bar is whether the ownership and operation of these websites, and the acceptance and clearing of funds on behalf of the Enterprise, is sufficient for personal jurisdiction over the (purportedly) foreign defendants, and whether their acts in furtherance of the Enterprise are sufficient for personal jurisdiction. These questions must be answered in the affirmative.

## II. ARGUMENT

### A. Standard of Review

For purposes of a Motion to Dismiss under Fed.R.Civ.P. 12(b)(2), Plaintiffs' facts are assumed to be true unless directly controverted. *Panavision Int'l v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998). "[C]onflicts between the facts contained in the parties' affidavits must be resolved in [plaintiffs'] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *AT&T v. CompagnieBruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

Personal jurisdiction may be either general or specific. *Panavision*, 141 F.3d at 1320. "General jurisdiction exists when there are 'substantial' or 'continuous and systematic' contacts with the forum state, even if the cause of action is unrelated to those contacts." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (citing *HelicopterosNacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)). Specific jurisdiction may be asserted "if the case arises out of certain forum-related acts." *Id*.

The Racketeer Influenced and Corrupt Organizations Act ("RICO") provides for nationwide service of process. *See* 18 U.S.C. § 1965. Defendants MODENA and DELTABREEZE do not contest service. (*See* Stipulated Extension of Time to Respond to Complaint, Docket number 15). "In a statute providing for nationwide service of process, the inquiry to determine 'minimum contacts' is thus whether the defendant has acted within any

district of the United States or sufficiently caused foreseeable consequences in this country." *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004).

**B. <u>Minimum Contacts for Internet-Based Business</u>**

"Operation of a passive website is not enough to establish personal jurisdiction over a defendant, however, operation of an interactive, commercial website is often sufficient." *Quigley v. Guvera IP Pty Ltd.*, 2010 WL 5300867, *3 (N.D.Cal.2010); *Cybersell, Inc. v. Cybersell, Inc*., 130 F.3d 414, 418 (9th Cir. 1997). "A website that is used to conduct business, raise money, or asks users to enter their contact information to gain access to information on the website is interactive and commercial enough to justify a finding a personal jurisdiction." *Quigley*, 2010 WL 5300867 at*3; *Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998); *Am. Auto. Ass'n, Inc.v. Darba Enters., Inc.*, 2009 WL 1066506, at *4 (N.D. Cal. 2009).

The facts as alleged clearly militate toward a finding of personal jurisdiction over both MODENA and DELTABREEZE. Plaintiffs have alleged that both Defendants MODENA and DELTABREEZE are part of the AmateurMatch Enterprise. (Compl. ¶ 24). MODENA and DELTABREEZE own hundreds of websites, some of which form the core "adult dating" websites at issue here. (Compl. ¶ 27). MODENA and DELTABREEZE coordinate their activities as co-conspirators to carry out the scheme to defraud Plaintiffs and Putative Class Members as described herein. (Compl. ¶ 23).

As of the date of this Complaint, Defendant MODENA owns and operates seriousgold.com along with co-conspirator PIRANHA. (Compl. ¶ 129). Seriousgold.com along with datinggold.com are responsible for sending the advertisements which are ubiquitous on the Internet for the Dating Websites and for controlling the massive affiliate network which enlists third-parties to send out fraudulent Spam e-mail to attract users like plaintiff AUG to the Dating Websites.(Compl. ¶ 287).

Each of the Dating Websites is highly interactive and they "share a vast, *common* database of fictitious Profiles" (Compl. ¶ 64.) There are dozens, possibly hundreds, of front-end websites, providing different user interfaces, engineered to accomplish the various phases of the Scheme. Behind them all, and controlling them all, are the Defendants including MODENA, and DELTABREEZE. (Compl. ¶ 123). The entire Scheme is orchestrated through HENNING who is the principal of DENIRO as well as MODENA and DELTABREEZE. As Plaintiffs have alleged, HENNING is the domain name service or DNS contact name for MODENA and DELTABREEZE. (Compl. ¶ 127).

Defendant MODENA has at times relevant to this complaint owned and operated the primary website AmateurMatch.com. (Compl. ¶ 128). Defendant DELTABREEZE, owns hundreds of domains and operates numerous AmateurMatch Dating Websites including, but not limited to, amateurmatch.net, romancer.net, inmatch.com, and maturematch.com. (Compl. ¶ 131). Ownership and control of the various AmateurMatch Websites sometimes changes from one Enterprise company to another as directed by HENNING. (Compl. ¶ 134). All of the AmateurMatch Websites are hosted on the same server and use the same Internet Protocol address. (Compl. ¶ 135). This essentially means that while the AmateurMatch Enterprise corporations are in four different countries, and the AmateurMatch Websites are nominally controlled and operated by the separate corporations, the AmateurMatch Websites exist on the same group of servers operated from one computer network in California. (Compl. ¶ 135).

Romancer.net; beematch.net; ebonyamateurmatch.net; datematch.net; matureamateurmatch.net; and asianamateurmatch.net. among others, are also owned and operated by DELTABREEZE, and appear to be separate and distinct websites from their ".com" counterparts owned and operated by DENIRO and HENNING. (Compl. ¶ 142). All of

DELTABREEZE's ".net" domains, however, use the same backend database and algorithms as the DENIRO ".com" counterparts. (Compl. ¶ 143). Simply put, if an individual joins DELTABREEZE's amateurmatch.*net* or romancer.*net*, he is actually joining the same website as DENIRO's amateurmatch.*com* or romancer.*com*. (Compl. ¶ 144). If a user joins DELTABREEZE's AmateurMatch.net they are automatically directed to AmateurMatch.com. (Compl. ¶ 145). Hence any allegations regarding AmateurMatch.com are automatically imputed to DELTABREEZE. (Compl. ¶ 145). Indeed, DENIRO described AmateurMatch.*net* as "our product" under penalty of perjury in the Superior Court of San Francisco County.

Similarly, MODENA owns the websites ammessages6.com and A-M-7.com. (Compl.¶ 146). If a user enters www.A-M-7.com into an Internet browser, the user is automatically redirected to DENIRO and HENNING's amateurmatch.com website. (Compl. ¶ 146). MODENA also owns and operates, among dozens of other websites, Billingsitepro.com, xxxdating.com, ebonyamateurmatch.com, freeswingersads.com, and datematch.net – all of which are highly interactive websites used to collect payments for the Enterprise (billingsitepro.com), advertising websites for AmateurMatch.com (freeswingersads.com) or are AmateurMatch Dating websites (xxxdating.com and datematch.net). (Compl. ¶¶ 432-433). While the individual domain names are owned and operated by MODENA (or alternatively DELTABREEZE), they all function as one unified entity. (Compl. ¶ 147).

DELTABREEZE also controls BeeMatch.net, an "upsell" site, which is linked to AmateurMatch.com and promises to double the users' chances of meeting a woman. (Compl. ¶ 83). These upsell sites have no value which merely separate graphical interfaces using the same backend database and algorithm. (Compl. ¶ 83). Notably, BeeMatch.net also is the merchant account used to process and clear payments from plaintiff BADELLA.

***1. Merchant Accounts and Payment Processing***

The various businesses of the AmateurMatch Enterprise partner with third-party offshore merchant account providers so that they can charge users' credit cards. (Compl. ¶ 163). Any merchant that wishes to utilize credit card payments for its services or products must set up a merchant account with each credit card company. (Compl. ¶ 149). Merchant accounts are the life-blood of the AmateurMatch Enterprise, as they are for any Internet based company. (Compl. ¶ 150). Integral to the Scheme is the collection and clearing of payments through the Visa and MasterCard Merchant accounts. (Compl. ¶ 150). DELTABREEZE owns payment portal websites including Beematch.net and MODENA owns and operates mysupport365.com. (Compl. ¶¶ 169, 171).

This simply means that both MODENA and DELTABREEZE have applied for and received merchant accounts to clear and collect the funds stolen from the Plaintiffs and Putative Class members. In fact, as alleged below, both movants have cleared and collected specific transactions from plaintiff BADELLA on behalf of the Enterprise.

Other websites forming part of the Scheme involve the AmateurMatch Web-cam Sites. The various AmateurMatch Dating Websites integrate the Web-cam sites into the overall Scheme by advertising the web-cam sites in banner ads that appear on the home page of the AmateurMatch Dating Websites. (Compl. ¶ 180). MODENA owns and operates, among others, webcamclub.tv, which is just a website facade for webcamclub.com. (Compl. ¶ 186).

***2. Specific Plaintiff Allegations***

In or about December of 2008, BADELLA registered for the basic "free" membership for AmateurMatch.com. (Compl. ¶ 226). In 2008, AmateurMatch.com was owned and operated by Defendant MODENA. (Compl. ¶ 136). MODENA owns and operates mysupport365.com and

provided the instrumentality and merchant account to charge the credit card of Plaintiff BADELLA for the benefit of the AmateurMatch Enterprise. (Compl. ¶ 252-62).

From December 21, 2008 to April 20, 2009, BADELLA made monthly electronic payments of $24.99 to "BEEMATCH.NET" in Great Britain. (Compl. ¶ 237). Defendant DELTABREEZE owns and operates BeeMatch.net. (Compl. ¶ 238 ).

To maintain its access to the merchant account system, the AmateurMatch Enterprise set up numerous business entities to fraudulently obtain merchant accounts (the "AmateurMatch Merchant Accounts"). (Compl. ¶ 432). As mentioned above MODENA owns and operates Billingsitepro.com, as well as mysupport365.com for this purpose.

There are thousands of additional instances of wire fraud by each of the defendants which will be revealed in discovery. (Compl. ¶ 435). Each of the foregoing businesses has obtained a merchant account from a merchant account provider through a fraudulent merchant account application. (Compl. ¶ 436).

All of the websites named in the Complaint which are currently owned by MODENA and DELTABREEZE respectively, or were once owned by the movants, were responsible for advertising, commerce, aimed at this Judicial District and have harmed millions of individuals across the country and significant numbers in this Judicial District. There are invariably dozens of yet-to-be-named websites owned by MODENA and DELTABREEZE that are responsible for advertising and commerce aimed at this Judicial District, and have harmed millions of individuals across the country and significant numbers in this Judicial District.

The forgoing clearly indicates the MODENA and DELTABREEZE are integral parts of the conspiracy and own and operate a significant number of interactive websites used to lure

individuals, defraud them and collect those payments. Accordingly, this Court may properly exercise personal jurisdiction under RICO.

**C. Pendant Personal Jurisdiction Under RICO**

This Court may exercise jurisdiction over the state-law claims at bar even assuming MODENA and DELTABREEZE's contention that California's long-arm statute (Code of Civil Procedure § 410.10) would not allow the exercise of personal jurisdiction over the state-law claims if they were standing alone.

In *Action Embroidery Corp.*, the Ninth Circuit adopted the doctrine of "pendent personal jurisdiction." Under this doctrine, a court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction. 368 F.3d. at 1180-81.

Pendent personal jurisdiction is typically found where one or more federal claims for which there is nationwide personal jurisdiction are combined in the same suit with one or more state or federal claims for which there is not nationwide personal jurisdiction. Consequently, this Court may properly jurisdiction over all claims if it finds it has personal jurisdiction over the RICO claim.

**D. Personal Jurisdiction State-Law Claims**

In light of the above, this Court has personal jurisdiction over MODENA and DELTABREEZE as to Plaintiffs' RICO claims. In the event this Court determines it does not have jurisdiction under RICO and pendant jurisdiction over the state law claims, the facts still provide ample allegations of jurisdiction under traditional (non-RICO) analysis.

Personal jurisdiction must exist for each claim asserted against a defendant. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1289 n.8 (9th Cir. 1977). If the state law claims

against MODENA and DELTABREEZE are to be heard in the Northern District of California, there must be a basis for personal jurisdiction over these claims. *Action Embroidery Corp.*, 368 F.3d at 1180.

***1. General Jurisdiction Over State Law Claims***

Under California's long-arm statute, Cal. Code Civ. Proc. § 410.10, "federal courts in California may exercise jurisdiction to the extent permitted by the Due Process Clause of the Constitution." *Panavision v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). "California permits the exercise of personal jurisdiction to the full extent permitted by due process." *Bancroft & Masters, Inc.*, 223 F.3d at 1086.

"The standard for establishing general jurisdiction is 'fairly high....'" *Id.* (quoting *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986)). The contacts with the forum state must be of a sort to establish "approximate physical presence." *Id*. (citing *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984)); *see Int'l Shoe*, 326 U.S. at 316-17 ("[T]he terms 'present' or 'presence' are used merely to symbolize those activities of the corporation's agent within the state which courts will deem to be sufficient to satisfy the demands of due process."). "[F]ocus [is] upon the 'economic reality' of the defendants' activities rather than a mechanical checklist." *Gates Learjet*, 743 F.2d at 1331. Even if substantial, or continuous and systematic, contacts exist, the assertion of general jurisdiction must be reasonable. *Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc.*, 1 F.3d 848, 852-53 (9th Cir. 1993).

**a. Substantial or Continuous and Systematic Contacts Test**

In the context of Internet based business,

> [T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet .... At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and

> repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end ... a defendant has simply posted information on an Internet Web site which is accessible to [forum resident] users.... The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer.

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (citations omitted). MODENA and DELTABREEZE's overall commercial contacts with California meet the continuous and systematic contacts as set forth in the sliding-scale test. The facts as alleged by Plaintiffs indicate that MODENA and DELTABREEZE meet the first set of factors set out in these cases: they make sales, advertise and solicit business in the state, and serve the state's markets. Moreover, millions of dollars in sales, driven by an extensive, ongoing, and sophisticated sales effort involving very large numbers of direct email solicitations and millions of catalog sales, qualifies as "substantial" or "continuous and systematic" commercial activity. *See Coastal Video Communications Corp. v. Staywell Corp.*, 59 F. Supp. 2d 562, 572 (E.D. Va. 1999) ("As with traditional business contacts, the most reliable indicator of the nature and extent of ... Internet contact with the forum state will be the amount of sales generated in the state by or through the interactive website."); *cf. Bancroft*, 223 F.3d at 1086 (rejecting general jurisdiction on basis of occasional, unsolicited sales of tournament tickets and merchandise to California residents); *Revell v. Lidov*, 317 F.3d 467, 471 (9th Cir. 2002) (finding that, although "the maintenance of a website is, in a sense, a continuous presence everywhere in the world," the contacts of an online journal were not "substantial" because it received only 17 and then 18 subscriptions from forum state residents).

Unlike the defendant in *Bancroft*, Plaintiffs allege that MODENA and DELTABREEZE "target" their electronic advertising at California and maintain a highly interactive, as opposed to "passive" website, from which very large numbers of California consumers regularly make purchases and interact with MODENA and DELTABREEZE sales representatives.

Nor are any of MODENA and DELTABREEZE's contacts occasional or infrequent. MODENA and DELTABREEZE's contacts are part of a consistent, ongoing, and sophisticated sales effort that has included California for a number of years.

In short, even under the heightened standard applied to general jurisdiction, the "consistent and substantial pattern of business relations" represented by these facts is sufficient to confer general jurisdiction. There is nothing "random, fortuitous, or attenuated" about subjecting MODENA and DELTABREEZE to the authority of this Court as MODENA and DELTABREEZE have deliberately and purposefully availed itself, on a very large scale, of the benefits of doing business within the state.

**b. Reasonableness Test**

Even if there are sufficient contacts to support general jurisdiction in a particular case, it is still limited by a reasonableness analysis. *Amoco*, 1 F.3d at 851.

As discussed above, there is substantial evidence that MODENA and DELTABREEZE have purposefully interjected themselves into the California market. Moreover, Defendants have offered no evidence or indication of a conflict with the sovereignty, the forum state's interest in the dispute; the most efficient forum for judicial resolution of the dispute; the importance of the chosen forum to the Plaintiff's interest in convenient and effective relief; and the existence of an alternative forum.

***2. <u>Specific Jurisdiction</u>***

The Ninth Circuit established a three-part test to evaluate the nature and quality of a defendant's contacts so as to determine the availability of specific jurisdiction: (1) The nonresident defendant must do some act or consummate some transaction within the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) The claim

must be one which arises out of or results from the defendant's forum-related activities; (3) Exercise of jurisdiction must be reasonable. *Gordy v. Daily News, L.P.*, 95 F.3d 829, 831-32 (9th Cir. 1996). Incorporating the standards set forth in *Burger King*, the Ninth Circuit expounded upon the requirements for purposeful availment, noting that purposeful direction of some act having effect in the forum constitutes sufficient contact to exert jurisdiction, and that a lesser showing of contacts with the forum may be sufficient if considerations of reasonableness so require. *Haisten v. Grass Valley Medical Reimbursement Fund Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986).

**a. Purposeful Availment**

In order to satisfy the first prong of the test for specific jurisdiction, Defendants must have either purposefully availed themselves of the privilege of conducting business activities within the forum, or purposefully directed activities toward the forum. *Id*. Purposeful availment typically consists of action taking place in the forum that invokes the benefits and protections of the laws of the forum, such as executing or performing a contract within the forum. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). To show purposeful availment, a plaintiff must show that the defendant "engage[d] in some form of affirmative conduct allowing or promoting the transaction of business within the forum state." *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990).

"[T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the internet." *Cybersell*, 130 F.3d at 419 (quoting *Zippo Mfg. Co.*, 952 F. Supp. at 1124. Personal jurisdiction is appropriate where an entity is conducting business over the internet and has offered for sale and sold its products to forum residents. *See Stomp, Inc. v. NeatO, LLC*, 61 F.

Supp. 2d 1074, 1077-78 (C.D. Cal.1999); *Allstar Marketing Group, LLC v. Your Store Online, LLC*, 666 F. Supp. 1109, 1122 (C.D. Cal. 2009).

Here, Plaintiffs presented sufficient allegations and evidence in opposition to the Motion show purposeful availment. Plaintiffs alleged that Defendants MODENA and DELTABREEZE operate “fully interactive commercial websites” which they use to advertise and sell the fraudulent DatingWebsites at issue. Both MODENA and DELTABREEZE have cleared and accepted funds on behalf of the Enterprise from Plaintiff BADELLA.

Moreover, the Movants advertised and sold subscriptions to their bogus Dating Sites in the State of California. Defendants’ fully interactive websites, used to advertise and sell the fraudulent products, constitute affirmative conduct promoting the transaction of business with California. Such commercial activity in the forum amounts to purposeful availment of the privilege of conducting activities within the forum, thus invoking the benefits and protections of its laws. *See Schwarzenegger,* 374 F.3d at 802. Accordingly, Defendants MODENA and DELTABREEZE’s contacts with California are sufficient to show purposeful availment.

**b. Claim Arises out of Forum-Related Activities**

The second prong of the test for specific jurisdiction requires that the claim be one that arises out of or relates to the defendant's activities in the forum. *Panavision*, 141 F.3d at 1320. This requires a showing of “but for” causation. *Id*. at 1322 (“We must determine if the plaintiff Panavision would not have been injured ‘but for’ the defendant conduct directed toward Panavision in California.”). Here, Defendants’ contacts with the forum are their advertising and sales of fraudulent Dating Websites to customers in this state; but for Defendants’ integral roles, and the dozens of AmateurMatch Websites they control, Plaintiffs would not have been injured. Accordingly, the second requirement for specific jurisdiction is satisfied.

**c. Reasonableness of Exercise of Jurisdiction**

The third prong of the test for specific jurisdiction provides that the exercise of jurisdiction must comport with fair play and substantial justice. *Id*. at 1320. To determine whether the exercise of jurisdiction over a non-resident defendant comports with fair play and substantial justice, a court must consider the seven factors first introduced in *Core-Vent Corp. v. Nobel Indus.*, 11 F.3d 1482, 1487-88 (9th Cir. 1993). Jurisdiction is reasonable at bar under the *Core-Vent* factors.

First, California has a strong interest in adjudicating the dispute. Plaintiff BADELLA is a California resident and the actions alleged in the Complaint substantially impact a significant number of residents in this state and in this Judicial District. Also, once again, while these companies are theoretically "non-resident foreign companies," the websites and instrumentality of their activities reside on servers in the State of California.

Second, the extent of Defendants' purposeful interjection into the forum state's affairs is significant, as Plaintiffs have alleged as a significant amount of the Defendants activities relate to California customers.

Third, the burden on Defendants, even as nominal residents of Cyprus and Antigua, to litigate in California is insignificant, particularly given that: 1) they purposefully sought the benefits of conducting business in California, and 2) because they have no substantial employees or operations in those countries. Moreover, Allan Henning, who controls Defendants, *is* in California.

Fourth, consideration of the most efficient judicial resolution is no longer weighed heavily given the modern advances in communication and transportation.

Fifth, with respect to the existence of an alternative forum, Defendants have not come forward to request an alternative forum.

Sixth, it would be costly and inconvenient for Plaintiffs to litigate in Antigua or Cyprus; and, to the extent to which the exercise of jurisdiction would conflict with the sovereignty of Defendants' state, "[l]itigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist."

Balancing these factors, this Court's exercise of jurisdiction over Defendants is reasonable.

## III. CONCLUSION

For the foregoing reasons the Motion should be denied, or Plaintiffs should be permitted to amend the Complaint.

Respectfully submitted,

Dated: January 3, 2011

/s/ Richard M. Garbarini

Richard M. Garbarini (admitted *Pro Hac Vice*)
GARBARINI LAW GROUP P.C.
501 Fifth Ave, Suite 1708
New York, New York
Phone: (212) 300-5358, Fax: (888) 265-7054

Daniel L. Balsam (State Bar No. 260423)
THE LAW OFFICES OF DANIEL BALSAM
3145 Geary Blvd. #225
San Francisco, CA 94118
Phone & Fax: (415) 869-2873

*Attorneys for Plaintiffs*