1   Daniel L. Balsam (State Bar No. 260423)
    THE LAW OFFICES OF DANIEL BALSAM
2   3145 Geary Blvd. #225
    San Francisco, CA 94118
3   Phone: (415) 869-2873
    Fax: (415) 869-2873

4

5   Richard M. Garbarini (admitted *Pro Hac Vice*)
    GARBARINI LAW GROUP P.C.
    501 Fifth Ave, Suite 1708
6   New York, New York
    Phone: (212) 300-5358
7   Fax: (888) 265-7054

8   *Attorneys for Plaintiffs*

9

10              **IN THE UNITED STATES DISTRICT COURT**

11           **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

12                    **SAN FRANCISCO DIVISION**

13  ROBERT BADELLA, individually and on behalf   )   Case No. 3:10-cv-03908-CRB
    of all persons similarly situated,            )
14                                                )   **PLAINTIFFS' OPPOSITION TO**
                      Plaintiffs,                  )   **DEFENDANTS' MOTION TO**
15                                                )   **DISMISS PLAINTIFFS' VERIFIED**
                       v.                         )   **COMPLAINT FOR FAILURE TO**
16                                                )   **STATE A CLAIM AND FAILURE**
    DENIRO MARKETING LLC,                         )   **TO ALLEGE FRAUD WITH**
17  a California limited liability company, *et al*, )   **SUFFICIENT PARTICULARITY**
                                                  )
18                    Defendants.                 )   Hon. Charles R. Breyer
    _____  )

19

20

21

22

23

24

---

**OPPOSITION TO MOTION TO DISMISS**          i

# TABLE OF CONTENTS

Table of Contents ............................................................................................................. ii

Table of Authorities ........................................................................................................ iii

SUMMARY OF ARGUMENT ......................................................................................... vi

STATEMENT OF FACTS ..................................................................................................1

ARGUMENT ......................................................................................................................5

    I.     The Complaint Properly Alleges RICO Claims ...........................................5

    II.    The Complaint Properly Alleges Reliance and Fraud Where Necessary .....................8

    III.   The Complaint Properly Alleges a Viable State Law Claim for Unlawful Unsolicited Commercial Email ...................................................................11

    IV.   The "Terms and Conditions" Web Page Does Not Immunize Defendants .................12

CONCLUSION .................................................................................................................15

# TABLE OF AUTHORITIES

**Statues and Rules**

18 U.S.C. § 1029 ...............................................................................................6

18 U.S.C. § 1343 ............................................................................................5, 6

18 U.S.C. § 1956 ..............................................................................................6,

18 U.S.C. § 1961 ............................................................................................5, 6

18 U.S.C. § 1962 .........................................................................................5, 6, 8

18 U.S.C. § 1964 ...............................................................................................5

Fed. R. Civ. P. 10(c) .....................................................................................10, 11

Fed. R. Civ. P. 8(a) ...........................................................................................8

Fed. R. Civ. P. 9(b) .....................................................................................8, 9, 10

Fed. R. Civ. P. 10(c) ..........................................................................................9

Cal. Business & Professions Code § 17200 .......................................................... 10, 12

Cal. Business & Practices Code § 17208 .................................................................12

Cal. Business & Professions Code § 17500 *et seq.*..................................................... 12

Cal. Business & Professions Code § 17529.5 ..................................................... 10, 11, 12

Cal. Code Civ. Proc. § 340(a) ............................................................................11

Cal. Civil Code § 1750 *et seq.* ......................................................................... 10

## Cases

*Adray v. Adry-Mart, Inc.*,
    76 F.3d 984 (9th Cir. 1995) .....................................................................14, 15

*Asis Internet Services v. Consumerbargaingiveaways, LLC*,
    622 F.Supp.2d 935 (N.D. Cal. 2009) ...............................................................12

**Cases (cont.)**

*Bridge v. Phoenix Bond & Indemnity Co.*,
    533 U.S. 639 (2008) .........................................................................8

*In re Sumitomo Copper Litigation*,
    995 F. Supp. 451 (S.D.N.Y. 1998)....................................................9

*McNally v. United States*,
    483 U.S. 350 (1987).........................................................................6

*Murphy v. Kenneth Cole Productions Inc.*,
    40 Cal. 4th 1094 (2007) ...........................................................11, 12

*Neder v. United States*,
    527 U.S. 1 (1999)........................................................................7, 8

*Rivera v. Anaya*,
    726 F.2d 564 (9th Cir. 1984) .........................................................12

*Schmuck v. United States*,
    489 U.S. 705 (1989).........................................................................9

*Spira v. Nick*,
    876 F. Supp. 553 (S.D.N.Y. 1995).................................................8, 9

*Transcription Communications Corp. v. John Muir Health*,
    2009 WL 666943 (N.D. Cal. Mar. 13, 2009)............................10, 11

*United States v. Federal Record Service Corp.*,
    1999 WL 335826 (S.D.N.Y. May 24, 1999) ..................................14

*United States v. Lee*,
    296 F.3d 792 (9th Cir. 2002) ..........................................................6

*United States v. Milwitt*,
    475 F.3d 1150 (9th Cir. 2007) ......................................................5, 6

*United States v. Turkette*,
    452 U.S. 576 (1981).......................................................................6, 7

*United States v. Yarnell*,
    129 F.3d 1127 (10th Cir. 1997) ..................................................13, 14

# TABLE OF AUTHORITIES (cont.)

**Cases (cont.)**

*Westerfield v. Quizno's Franchise Co.,*
    2008 WL 2512467 (E.D. Wis. Apr. 16, 2008) .................................................15

*Williams v. Gerber Products Co.,*
    552 F.3d. 934 (9th Cir. 2008) ...........................................................................14

# SUMMARY OF ARGUMENT

Moving Defendants now admit that AmateurMatch is a not a genuine Internet dating service, as it is advertised and marketed to be, but rather is a sham service populated with fictitious computer-generated user profiles. Their sole factual defense is a provision buried in their lengthy "Terms and Conditions" webpage. This provision: a) which inadequately describes the true facts of the AmateurMatch service, b) is intended by the moving Defendants to be ineffective so that they may attract paying users to their fraudulent service, and c) is in fact ineffective to remedy the false impression created by their misleading advertising and marketing.

With respect to the issue of alleging reliance: a) the Supreme Court unequivocally held that a claim for damages under RICO requires no proof or allegation of reliance, *Bridge v. Phoenix Bond & Indemnity Co.*, 533 U.S. 639, 649-50 (2008); and b) where required for their claims arising under California law, the Plaintiffs can and do allege justifiable reliance on Defendants' advertising and marketing of the AmateurMatch service as a genuine dating service.

With respect to the issue of alleging fraud with particularity, the Complaint alleges both a detailed description of the Defendants' scheme to defraud (by passing off the sham AmateurMatch dating service as a real one), and with respect to each individual Plaintiff, alleges in over 200 paragraphs and 28 pages, each individual's interactions with AmateurMatch and their reliance on AmateurMatch's misrepresentations. (Complaint ¶ 221-422.)

Finally, Plaintiffs' claims as to Defendants' unlawful spam is not barred by the statute of limitations, which is four years, not one.

All Plaintiffs respectfully submit this memorandum of law in opposition to the motion of Defendants Deniro Marketing LLC and Allan Henning to dismiss the Complaint for failure to state a claim and failure to allege fraud with sufficient particularity.

## STATEMENT OF FACTS

Defendants own and operate AmateurMatch.com, a sham Internet dating website. There are numerous legitimate dating services on the Internet, e.g., eHarmony.com, OkCupid.com, and Match.com. These legitimate services provide a means for users to make new social contacts for dating or companionship. Typically, users of these services enroll as members and provide information about themselves and the kind of person they are looking for, thereby creating a profile. The service then provides a means for matching member profiles and enabling member-to-member communications, which may lead to social contacts as desired by the members.

According to the allegations of the Complaint, which the moving Defendants concede must be accepted as true, (Mem. in Supp. at 1-2), AmateurMatch is a sophisticated counterfeit of an Internet dating service, built upon a huge database of fake user profiles designed to deceive consumers into paying to join and continue using its fraudulent service. (Complaint ¶ 32.) The various functions of AmateurMatch are carried out at the direction of Defendant Allan Henning through the use of a syndicate of domestic and foreign business entities under his control, including Defendants Deniro Marketing LLC, Modena Marketing Inc., Deltabreeze Holdings Ltd., and Piranha New Media Ltd. The business entities are used by Henning to hold title to domain names employed by the AmateurMatch service (Complaint ¶¶ 129-136), and for other purposes according to his needs as they may arise from time to time.

Defendants aggressively market and promote AmateurMatch as a <u>genuine</u> adult dating service, in frank and unequivocal terms, as "The World's Sexiest Adult Dating Community" to

"Find Your Sex Partner," specifically for "Erotic Email or Cyber Sex, Erotic Photo Exchange, Other Sexual Activities, Discreet Relationship or Casual Sex, Group Sex (3 or more), Just Naughty Fun!, Voyeurism, and 1-on-1 Sex." (Complaint ¶ 28 and Exhibit B thereto.) Those and similar claims are widely disseminated over the Internet in the form of unsolicited commercial emails ("spam"), banner ads, and pop-up ads, originating from AmateurMatch's in-house affiliate department. (Complaint ¶ 48.)

Although AmateurMatch targets all segments of the community, its users are believed to be predominantly men seeking contact with women – for simplicity this memorandum will discuss the service in those terms.

Once attracted to an AmateurMatch website, a prospective user is offered a "free trial" to the service. (Complaint ¶ 42.) In registering for a free trial, the user provides personal information such as gender, age, and geographic location, and generally writes a short description of the member and what he is looking for, thereby creating a profile. Within approximately ten minutes after the new user registers, he is bombarded with dozens of personal messages and "buddy requests." (Complaint ¶ 67.) These messages and requests are not from the real women the user hopes to meet. Rather, they are fake messages generated by the AmateurMatch system according to a sophisticated algorithm designed to create fictitious female profiles that are likely to appeal to the new user. The messages appear to come from attractive women, located near the user geographically, about the user's age or younger, illustrated by photographs of real women gleaned from some other website. Exhibit C to the Complaint is a representative AmateurMatch "inbox" overflowing with fake messages from non-existent females. These messages take the general form of: "I reviewed your profile, we appear to be a match, let's meet." (Complaint ¶ 70.) These messages are computer-generated according to

algorithms that construct a message using "canned" message segments, taking care not to send exactly the same message twice to a given user.

A user can read these messages free of charge. However, if he wants to reply to a message, he must pay. (Complaint ¶¶ 74-75.) A user who clicks on the "reply" button while viewing a message during the free trial period is automatically directed to a web page to "upgrade" to a regular, paid subscription. The user must submit his credit card information and agree to be billed $24.99 or $29.99 monthly before his reply message will be accepted by the AmateurMatch system.

After paying to reply to a fictitious message, the user might engage in what appears to be a two-way conversation with the fictitious profile; however, the other side of the conversation is generated by computer or by an AmateurMatch employee. (Complaint ¶¶ 110-12.) The purpose is to maintain the illusion that the user is communicating with a real woman behind the attractive profile generated by AmateurMatch. Of course, a meeting with the non-existent woman is impossible, and eventually the conversation simply stops. (Complaint ¶ 114.) But there is no end to the flood of fake messages in the member's inbox… when one "woman" vanishes another appears to take her place, and a member might pay for many months of this worthless service until he finally catches on and cancels his subscription.

This action is brought by six named Plaintiffs, seeking to represent a Class of persons who paid AmateurMatch good money for its worthless and fraudulent service. Each of the six Plaintiffs registered as paid users of AmateurMatch believing it to be a real dating service, as advertised. The Complaint at Paragraphs 221-422 contains detailed allegations with respect to each named Plaintiff, including: how and when the Plaintiff became aware of AmateurMatch and registered for its service; details of their interactions with the AmateurMatch system including

the identification of specific fictitious profiles that were used to contact each Plaintiff to induce

him to register as a paid user; and reliance by each Plaintiff on AmateurMatch's representations.

There will be no dispute in this case that AmateurMatch is not a real dating service and that it relies on fictional member profiles. Remarkably, Defendants do not attempt to defend their advertising and marketing representations that AmateurMatch is a real dating service. Recognizing the impossibility of defending those representations, Defendants now take the position that no one could reasonably rely on them, believing that to be exculpatory.

Despite being wholly unable to defend its claims, the moving Defendants ask the Court to rule that no action against AmateurMatch could possibly succeed under any theory, and to dismiss this action with prejudice and without leave to amend. The sole basis for this request is AmateurMatch's "Terms and Conditions" ("T&C") webpage, Exhibit 1 to the Declaration of Allan Henning.[1] The T&C webpage is an instrumentality of the fraudulent scheme, designed to defeat any attempt by a subscriber to obtain a refund. For example, the T&C provides that if a dissatisfied subscriber obtains a refund from his credit card issuer, the subscriber must reimburse AmateurMatch upon demand and pay an additional $100 in damages. (Henning Decl. Exh. 1 ¶ II.B.2.e. at p. 9.) AmateurMatch's T&C does not immunize the Defendants from suit as they seem to believe.

---

[1] AmateurMatch's "Terms and Conditions" have been amended at various times in the four years prior to the commencement of this action. Plaintiffs do not concede that the version attached to Mr. Henning's declaration has not been materially altered from previous versions.

## ARGUMENT

### I.    The Complaint Properly Alleges RICO Claims

The first and second causes of action are for damage to property by reason of a violation of the primary RICO provision, 18 U.S.C. § 1962(c), and the conspiracy provision, 18 U.S.C. § 1962(d), respectively.  Section 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

RICO provides a civil remedy for persons injured in their property by reason of a violation of Section 1962(c):

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . .

18 U.S.C. § 1964(c).

The Plaintiffs claim relief against the Defendants on the basis that they participate in the affairs of AmateurMatch through a pattern of wire fraud, access device fraud, and money laundering, which are among the many acts designated in 18 U.S.C. § 1961(1) as acts of racketeering.  It is alleged that the operation of the AmateurMatch Enterprise directly, proximately, and without intermediation caused injury to the property of the Plaintiffs and the putative Class, in that they gave up good money to subscribe to the worthless, fraudulent service offered by the Defendants.  (*E.g.*, Complaint ¶ 465.)

The Complaint alleges that the Defendants' use of the Internet to carry on their sham Internet dating operation meets the elements of wire fraud under 18 U.S.C. § 1343: "1) a scheme to defraud, 2) a use of the mails or wires in furtherance of the scheme, and 3) a specific intent to

deceive or defraud." *United States v. Milwitt*, 475 F.3d 1150, 1155 (9th Cir. 2007). The use of the Internet is, of course, a use of wire communications. *See, e.g., United States v. Lee,* 296 F.3d 792, 793-94 (9th Cir. 2002) (defendant convicted of wire fraud for using Internet to conduct fraudulent scheme). In the wire fraud statute, "to defraud" means "wronging one in his property rights by dishonest methods or schemes . . . the deprivation of something of value by trick, deceit, chicane or overreaching." *McNally v. United States*, 483 U.S. 350, 358 (1987). Plaintiffs allege and intend to prove that the AmateurMatch scheme meets that description.

The Complaint further alleges that the Defendants "re-invest" the proceeds of the AmateurMatch scheme into further operation of the business, thereby engaging in promotional money laundering within the meaning of 18 U.S.C. § 1956(a)(1)(A)(i). (Complaint ¶¶ 444-451.) Moreover, it is alleged that the Defendants have obtained merchant accounts, necessary to charge credit cards, by fraud and misrepresentation, thereby committing further predicate acts of access device fraud within in the meaning of 18 U.S.C. § 1029. (Complaint ¶¶ 149-174; 430-443.)

Plaintiffs allege that these acts of racketeering are carried out through a syndicate of domestic and foreign business entities including Defendants Deniro Marketing, Modena Marketing, Deltabreeze Holdings, and Piranha New Media under the control and direction of Defendant Allan Henning. Plaintiffs allege that Henning's syndicate of business entities constitutes an enterprise, styled the AmateurMatch Enterprise, that (a) is an ongoing organization with a decision-making framework or mechanism for controlling its activities (i.e. Henning), (b) exists separately and apart from the pattern of racketeering activity alleged herein, and (c) would continue to exist as legal entities even if the pattern of racketeering activity alleged in the Complaint ceased. (Complaint ¶¶ 452-456.) This is sufficient to allege an "enterprise" within the RICO framework, in which the existence of an enterprise is proved "by evidence of an

ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). The Complaint also alleges that the Defendants together form a conspiracy to violate RICO, in that they have agreed to help each other commit predicate acts.

Moving Defendants protest that the Complaint does not delineate exactly which business entity is responsible for each function and act, but the truth is that all the AmateurMatch business entities are merely Henning's instruments that he employs in various ways from time to time at will, as his needs may require. At a minimum, the Complaint alleges that the ownership of AmateurMatch domain names is transferred between the entities from time to time, and that they are involved in billing and acquisition of merchant accounts. (Complaint ¶¶ 129-136.) More detailed information regarding exactly what each entity does or has done under the AmateurMatch umbrella is uniquely within the possession of Henning and his employees.

Contrary to the moving Defendants' representations to the Court, reliance is not an element of a civil RICO claim. Although the Plaintiffs do allege and will prove reliance, under unequivocal holdings of the Supreme Court, neither the underlying predicate acts of wire fraud, nor the claim for damages arising from the resulting injury, have any requirement of reliance.

The Defendants' use of wire communications (i.e., the Internet) to carry out their scheme to defraud violates the federal wire fraud statute even if no party relies on their communications. This is so because what is prohibited by the fraud statutes is the act of using the mails or wires to carry out or to attempt to carry out a fraudulent scheme -- even if that act is not relied upon by anyone and does not cause damage. *Neder v. United States*, 527 U.S. 1, 24-25 (1999). In *Neder*, the Supreme Court made it clear that "the fraud statutes did not incorporate all the elements of common-law fraud."

The common-law requirements of "justifiable reliance" and "damages," for example, plainly have no place in the federal fraud statutes. *See, e.g., United States v. Stewart*, 872 F.2d 957, 960 (10th Cir. 1989) ("[Under the mail fraud statute,] the government does not have to prove actual reliance upon the defendant's misrepresentations") . . . . By prohibiting the "scheme to defraud," rather than the completed fraud, the elements of reliance and damage would clearly be inconsistent with the statutes Congress enacted.

Moreover, the Supreme Court held unequivocally in *Bridge v. Phoenix Bond & Indemnity Co.*, 533 U.S. 639 (2008) that a claim for damages under RICO requires no proof or allegation of reliance. In *Phoenix Bond*, the Court held that "no showing of reliance is required to establish that a person has violated § 1962(c) by conducting the affairs of an enterprise through a pattern of racketeering activity," and that no reliance is required to allege or prove injury "by reason of" such a violation. *Id*. at 649-50. "[A] plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations." *Id*. at 661.

Therefore, Defendants' argument that the RICO claims "stand or fall" with the common-law fraud claim is quite incorrect. Because the Plaintiffs need not prove or even allege reliance, even if the Court were to agree with the moving Defendants that the Complaint does not sufficiently allege reliance, this would not justify dismissal of the RICO claims.

## II.     The Complaint Properly Alleges Reliance and Fraud Where Necessary

Moving Defendants raise numerous objections to the Complaint on the grounds of alleged lack of particularity. The general rule of pleading, Fed. R. Civ. P. 8(a), calls for only "a short and plain statement of the claim showing that the pleader is entitled to relief." An exception to this rule is that: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The purpose of Rule 9(b) is "to place the defendants on notice of the precise misconduct with which they are charged, and to

safeguard defendants against spurious charges of immoral and fraudulent behavior." *Spira v. Nick*, 876 F. Supp. 553, 559 (S.D.N.Y. 1995).

The Complaint pleads the circumstances constituting wire fraud with particularity by incorporating the content of the Websites attached to the Complaint and by alleging the specific circumstances constituting the overall scheme to defraud. In a case

> in which the plaintiff claims that the mails or wires were simply used in furtherance of a master plan to defraud, the communications need not have contained false or misleading information themselves. *See Schmuck [v. United States]*, 489 U.S. [705,] 715 [(1989)]. In such cases, a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communications, is sufficient to satisfy Rule 9(b).

*In re Sumitomo Copper Litigation*, 995 F. Supp. 451, 456 (S.D.N.Y. 1998).

> [I]t is difficult to see any useful purpose in requiring that a RICO complaint specifically allege each mailing in furtherance of a complex commercial scheme, at least where, as here, the complaint alleges that numerous mailings of particular kinds were made in furtherance of the scheme. Once the plaintiff alleges with particularity the circumstances constituting the fraudulent scheme, neither the reputational interests nor the notice function served by Rule 9(b) would be advanced in any material way by insisting that a complaint contain a list of letters or telephone calls.

> In complex civil RICO actions involving multiple defendants, therefore, Rule 9(b) does not require that the temporal or geographic particulars of each mailing or wire transmission made in furtherance of the fraudulent scheme be stated with particularity. In such cases, Rule 9(b) requires only that the plaintiff delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme.

*Id.* (internal citation omitted).

The Complaint alleges that the AmateurMatch websites both (1) contain fraudulent representations regarding the AmateurMatch service, and (2) are used in furtherance of an overall scheme to defraud. The first aspect is pleaded with particularity by the attachment and incorporation of the websites themselves as exhibits to the Complaint, making them part of the Complaint for all purposes, Fed. R. Civ. P. 10(c). The second aspect is pleaded with particularity

by the allegations of the circumstances constituting the fraudulent scheme, particularly, that the Defendants seek to deceive members of the public into paying good money to subscribe to their sham dating service. This is sufficient to place the Defendants on notice of the precise misconduct with which they are charged and to ensure that the charge of fraudulent behavior is not spurious. Tellingly, the moving Defendants do not claim that they cannot determine from the Complaint what it is they are accused of.

Moreover, the Complaint alleges with minute particularity, in over 200 paragraphs and 28 pages, each individual Plaintiff's interactions with AmateurMatch and their reliance on AmateurMatch's misrepresentations. (Complaint ¶ 221-422.) Plaintiffs will not burden the record by reproducing those allegations in this Memorandum, but it is submitted that these detailed allegations, together with the general allegations of the AmateurMatch scheme to defraud and the use of wire communications to carry out that scheme, are sufficient to satisfy Rule 9(b) with respect to the RICO claims and the California law claims of fraud, negligent misrepresentation, Consumer Legal Remedies Act (CLRA), Cal. Civ. Code § 1750 *et seq*., California's Anti-Spam Law, Cal. Bus. & Prof. Code § 17529.5, and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.

With respect to the predicate acts of access device fraud, it happens to be the case that the Plaintiffs cannot determine from publically available information exactly how the AmateurMatch companies acquire their necessary merchant accounts. However, the Ninth Circuit has "held that the general rule that allegations of fraud based on information and belief do not satisfy Rule 9(b) may be relaxed with respect to matters within the opposing party's knowledge. In such situations, plaintiffs cannot be expected to have personal knowledge of the relevant facts." *Transcription Communications Corp. v. John Muir Health*, 2009 WL 666943 at *13 (N.D. Cal.

Mar. 13, 2009) (citing *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir.1993)). Plaintiffs allege that due to the Defendants' background and the nature of their business, it is a necessary inference that they could not obtain merchant accounts without misrepresenting themselves and with the knowing assistance of third party merchant account providers. (Complaint ¶¶ 149-174.) Further information is solely within the Defendants' knowledge, and Plaintiffs cannot be expected to know and allege all of the pertinent details at this early stage of the case.

### III.     The Complaint Properly Alleges a Viable State Law Claim for Unlawful Unsolicited Commercial Email

It is true that the Complaint alleges receipt of AmateurMatch "spam" by only two of the six Plaintiffs, Bradley Aug and Robert Langford. However, contrary to the moving Defendants contentions, Mr. Langford's spam claim is not barred by the statute of limitations, and Mr. Aug did purchase AmateurMatch services and therefore has standing.

Moving Defendants' claim that the statute of limitations for claims under Bus. & Prof. Code § 17529.5 is one-year period pursuant to Cal. Code Civ. Proc. § 340(a) is incorrect because Plaintiffs seek the remedy of statuory liquidated damages, which is not a penalty. In *Murphy v. Kenneth Cole Productions Inc.*, 40 Cal. 4th 1094 (2007), the California Supreme Court stated that "The Legislature certainly knows how to impose a penalty when it wants to," and "Had the Legislature intended [the code section at issue] to be governed by a one-year statute of limitations, the Legislature knew it could have so indicated by unambiguously labeling it a 'penalty.'" *Id*. at 1107, 1109. "[N]either the behavior-shaping aspect of overtime pay nor the fact that courts have referred to the remedy as a 'penalty' transforms overtime wages into a 'penalty' for the purpose of statute of limitations." *Id*. Moreover, "The [] underlying assumption, that payments made pursuant to statutory liability must constitute a penalty, is

incorrect," and "Where damages are obscure and difficult to prove, the Legislature may select a set amount of compensation without converting that remedy into a penalty." *Id*. at 1112.

Properly viewed, the remedy provided by Bus. & Prof. Code § 17529.5 is for liquidated damages for a private wrong, not a penalty for a public wrong. *See Rivera v. Anaya*, 726 F.2d 564, 567-8 (9th Cir. 1984). The statement to the contrary in *Asis Internet Services v. Consumerbargaingiveaways, LLC*, 622 F.Supp.2d 935, 944 (N.D. Cal. 2009) is merely dictum because the issue was not actually disputed and litigated. Bus. & Prof. Code § 17208 specifies a four-year statute of limitations for Section 17200 violations (unfair competition), and Section 17200 states that "unfair competition shall mean and include unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising *and any act denounced by Business and Professions Code Sections 17500 to 17535, inclusive*" – which obviously includes Section 17529.5.

### IV. The "Terms and Conditions" Web Page Does Not Immunize Defendants

Moving Defendants rely heavily on the AmateurMatch T&C – specifically, a disclaimer buried n the middle of a 25 page document – as a catch-all defense to any claims that might be brought against them. Indeed, the purpose of the AmateurMatch T&C is to frustrate any attempt by a subscriber to obtain a refund. It is engineered by AmateurMatch to present legal obstacles to any claim, with the guilty knowledge that AmateurMatch is a fraud and that the present Action was an inevitable consequence of that fraud. The T&C even prohibits subscribers from obtaining refunds (also known as "chargebacks") from their credit card issuers, imposing liquidated damages of $100 in the event of any such attempt. (Henning Decl. Exh. 1, ¶ II.B.2.e. at p. 9.) Plaintiffs urge the Court that the disclaimer does not render the Defendants immune from suit, for numerous reasons.

AmateurMatch's fraud exceeds the scope of its disclaimer.  The disclaimer admits that AmateurMatch contains some fictitious profiles, but states that the profiles and their associated messages will be marked with "OC," signifying "On-Line Cupid."  However, according to the Plaintiffs' investigation, it is alleged that the vast majority of AmateurMatch's fictitious profiles and messages are not marked "OC."  (Complaint ¶¶ 98-104.)  Indeed, some fictitious profiles are marked as "Verified," indicating that a real person has submitted identification documents to AmateurMatch to verify her identity.  (Complaint ¶¶ 105-109 & Exhibit E.)  While AmateurMatch's policy may have changed from time to time, as has its T&C page, for most or all of the Class Period (the four years preceding the commencement of the Action), it is alleged that the vast majority of fictitious profiles were not marked "OC" or were deceptively marked as "Verified," and that allegation must be accepted as true in deciding this motion.

AmateurMatch intends the disclaimer to be ineffective.  Deception is essential to the success of AmateurMatch.  Few if any men would knowingly pay $25 or $30 monthly to chat with *fictitious* female profiles.  The disclaimer in the T&C is merely an anti-litigation tactic, and is not a bona fide attempt to truly and fully inform prospective subscribers that everything they had read previously – the message that attracted them to the website and induced them to part with their money – was false, and that AmateurMatch is not a dating website at all.  The Court may compare the volume and intensity of AmateurMatch's fraudulent sales pitch with the obscure, technical, semi-hidden "correction," and conclude AmateurMatch's intent is to defraud persons who are perhaps unsophisticated in the construction of legal agreements, and may not actually read the disclaimer, or might disregard or misunderstand it.  Such a half-hearted, defensive disclaimer does not negate the evidence of a scheme to defraud.  *See, e.g., United States v. Yarnell*, 129 F.3d 1127, 1134 (10th Cir. 1997) (mail fraud conviction affirmed despite

disclaimer in written agreement); *United States v. Federal Record Service Corp.*, 1999 WL

335826 at *9 (S.D.N.Y. May 24, 1999) (disclaimers did not dispel false indicia that mailings

were official Social Security communications).

Moreover, the Ninth Circuit recently held that even truthful fine print cannot correct

misleading prominent initial representations.

> We disagree with the district court that reasonable consumers should be
> expected to look beyond misleading representations on the front of the box
> to discover the truth from the ingredient list in small print on the side of
> the box. The ingredient list on the side of the box appears to comply with
> FDA regulations and certainly serves some purpose. We do not think that
> the FDA requires an ingredient list so that manufacturers can mislead
> consumers and then rely on the ingredient list to correct those
> misinterpretations and provide a shield for liability for the deception.
> Instead, reasonable consumers expect that the ingredient list contains more
> detailed information about the product that confirms other representations
> on the packaging.

*Williams v. Gerber Products Co.*, 552 F.3d. 934, 939-40 (9th Cir. 2008). By extension, this

Court should find that a statement buried in the middle of a 25 page Terms & Conditions

document cannot insulate Defendants from liability for false messaging in their advertising and

on their websites that that they operate a legitimate dating service.

<u>The disclaimer is objectively insufficient to effectively dispel the false impression</u>

<u>conveyed by the AmateurMatch sales pitch.</u> Consumers come to the AmateurMatch websites

due to Defendants' false claims that they are genuine dating websites. Viewed objectively, the

T&C disclaimer is far too weak to correct the (intentionally) false initial impression that

AmateurMatch is a real dating service. Bona fide corrective advertising is difficult and

expensive – it is not easy to "unring a bell." The Ninth Circuit has noted the Federal Trade

Commission's practice of requiring businesses engaged in misleading advertising to spend 25%

of their advertising budget on corrective advertising. *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 989

1   n.2 (9th Cir. 1995).  AmateurMatch's T&C disclaimer constitutes far less than 25% of the

2   commercial impression of its false sales pitch – by design, the disclaimer is dwarfed by the

3   volume and intensity of the contradictory messages that draw consumers to the websites in the

4   first place, reinforce the false claims on the website itself, and induce them to spend their money.

5     <u>Public policy militates against giving effect to an exculpatory clause</u>.  Many courts hold

6   that "exculpatory clauses are unenforceable on public policy grounds where the alleged harm is

7   caused intentionally or recklessly."  *See, e.g., Westerfield v. Quizno's Franchise Co*., 2008 WL

8   2512467 at *9 (E.D. Wis. Apr. 16, 2008) (holding disclaimer in written franchise contract did not

9   preclude fraud claim), citing Restatement (Second) of Contracts § 195(1) (1979).  Here, to hold

10  that the AmateurMatch T&C confers immunity from suit would open the door to all manner of

11  frauds and subject the public to injury without the possibility of recourse.

12  **CONCLUSION**

13    For the foregoing reasons, the Motion to Dismiss should be denied.

14

15           Respectfully submitted,

16  Dated: January 3, 2011      _____/s/ Daniel L. Balsam_____
                                    Daniel L. Balsam (State Bar No. 260423)
17                                  THE LAW OFFICES OF DANIEL BALSAM
                                    3145 Geary Blvd. #225
18                                  San Francisco, CA 94118
                                    Phone & Fax: (415) 869-2873
19
                                    Richard M. Garbarini (admitted *Pro Hac Vice*)
20                                  GARBARINI LAW GROUP P.C.
                                    501 Fifth Ave,  Suite 1708
21                                  New York, New York
                                    Phone: (212) 300-5358, Fax: (888) 265-7054
22
                                    *Attorneys for Plaintiffs*
23

24