IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT BADELLA, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>DENIRO MARKETING LLC, et al.,<br><br>    Defendants.<br>_____/ | No. C 10-03908 CRB<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND (2) DEFERRING RULING ON MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PENDING JURISDICTIONAL DISCOVERY** |

       This is a putative class action purportedly involving a vast, fraudulent scheme centered around an internet dating website that lures "often lonely and vulnerable men into joining and continuing to pay for subscriptions [to the website] with the false promise that they are communicating with real women in their area who are interested in dating and/or intimate relationships." Compl. ¶ 38. In reality, according to Plaintiffs, the website is fraudulent, and few if any of the women on the site are real.

       Defendants have filed two motions to dismiss. One asserts that Plaintiffs have failed to state a claim. The other asserts that Defendants Deltabreeze Holdings and Modena Marketing should be dismissed for lack of personal jurisdiction.

       The Court Orders as follows regarding the motion to dismiss for failure to state a claim:

- The motion to dismiss the fraud claim is DENIED except to the extent the fraud claim is based on alleged misrepresentations that purportedly induced Plaintiffs to visit the website in the first place. As to that aspect of the claim, the motion to dismiss is GRANTED without prejudice.

- The motion is GRANTED with prejudice with respect to the Unsolicited Commercial Email claim, which is time barred.

- The motion is DENIED with respect to the RICO claims and state law claims other than the Unsolicited Commercial Email claim.

The Court DEFERS ruling on the motion to dismiss for lack of personal jurisdiction pending jurisdictional discovery. Defendants can renew their motion after jurisdictional discovery is completed if they believe there remains a basis for doing so.

## I.   Motion to Dismiss For Failure to State a Claim

### A.   Background[1]

Defendants own and operate a massive, complex "Internet empire" centered around dozens of fraudulent "adult dating" websites. Compl. ¶ 27. These websites are fraudulent in that they are "built upon a huge database of fake user profiles specifically designed to deceive consumers into paying to join and continue using" the sites. Id. ¶ 31.

Generally speaking, the scheme works as follows. First, people are attracted to the websites via spam, internet pop-up ads, or social networking scams. Id. ¶ 40. Next, the potential users see "fraudulent signage" and "fake testimonials" and are offered a free trial membership. Id. ¶ 41-42. Once the individual obtains the free membership, he (it is typically although not always a man) receives "a barrage of pre-written messages that *appear* to be coming from real, attractive, and often scantily-clad women who claim to have a great deal in common with, and want to meet, the new member, often promising sex." Id. ¶ 43, 45. In reality, these messages are automated and sent for the purposes of inducing the individual

---

[1] These facts are drawn from the Complaint, which the Court must accept as true at the motion to dismiss stage.

2

to purchase a fee-paying membership (costing between $25 and $30 per month), which is the only way he can respond to the messages he received. Id. ¶ 44, 67, 73-77, 81.

The fraud continues even after someone obtains a fee-paying membership. For example, users are "upsold" memberships to other equally fake websites that purportedly increase their chances of meeting women. Id. ¶ 82-85. Further, paying members "will continue to receive multiple messages every day from numerous fictitious profiles, some of which are marked with 'a nearly imperceptible 'OC,''"[2] which a user who had read the Terms and Conditions ("TAC") upon signing up would know meant that the profile associated with the message was not real. Id. ¶ 85. But most of fake profiles and messages are not properly identified as coming from OC's, and indeed even some of the supposedly "Verified" profiles are fake. Id. ¶¶ 94, 99-110. To make the fraud more compelling, Defendants do not rely merely on canned or automated messages to perpetuate it. Rather, they "employ actual individuals who control hundreds of fictitious profiles (Marked, Unmarked, and Verified), and respond to messages sent from users in response to the automated messages." Id. ¶ 111.

**B.     Fraud Claim**

Defendants move to dismiss the fraud claim on the grounds that (1) Plaintiffs have not pleaded reliance as a matter of law; and (2) Plaintiffs have not pleaded fraudulent conduct on the part of Defendants Deniro or Henning with sufficient particularity.

**1.     Plaintiffs have Pleaded Reliance**

Defendants' argument that Plaintiffs have not pleaded reliance is based upon a disclaimer in the website's TAC. That disclaimer, which a user is specifically directed to and must acknowledge reading, provides in pertinent part as follows:

> This Service is for Amusement Purposes, only.
>
> You understand and accept that our site, while built in the form of a personals service, is an entertainment service. All profiles are provided for the amusement and entertainment of our members and our users. You are not guaranteed that you will find a date, a

---

[2] "OC" refers to Online Cupid.

3

> companion, or an activity partner, or that you will meet any of our members in person.
>
> Online Cupid™ Communications: You understand, acknowledge, and agree that <u>some</u> of the user profiles posted on this site may be fictitious, <u>and</u> are associated with [] our "Online Cupids™", ("OC"). Our OC's work for the Site in an effort to stimulate conversation with users, in order to encourage further and broader participation in all of our Site's services, including the posting of additional information and/or pictures to the users' profiles.
>
> . . . .
>
> You further understand, acknowledge, and agree that, from time-to-time, OC's may contact both free users and paid users via computer-generated Instant Messages or emails for purposes of encouraging further or broader participation in our site's services and/or to monitor user activity. . . . <u>Message from OC's will contain the uniform designation "OC" to notify the user that a message has been received from an Online Cupid</u>.

Defs.' Mot. to Dismiss Ex. 1 § E (emphasis added).

The TAC does not defeat an allegation of reliance for three primary reasons. <u>First</u>, Plaintiffs allege that the websites are entirely or nearly entirely fictions, which is not revealed by the disclaimer. For example, Plaintiffs allege that the websites are "built upon a huge database of fake user profiles" and that the "vast majority of female profiles . . . are fictitious." Compl. ¶¶ 31, 87. <u>Second</u>, the Complaint alleges that many of the fictitious profiles and messages are <u>not</u> labeled "OC," thereby violating the TAC's representation that virtual messages and profiles will be marked. <u>See</u> Compl. ¶¶ 94-109 ("very few of the fake profiles were actually Marked"; "When a User receives a message from a fake 'woman,' the message itself is *not* marked "OC."; "the vast majority of fake profiles were of the Unmarked variety."; "The remaining group of fictitious profiles are marked 'Verified,' reinforcing the false impression that the messages are coming from real women."). <u>Third</u>, although the users were directed to the "Online Cupids" section of the TAC, Plaintiffs allege a widespread and pervasive effort on Defendants' part to make the website appear to be a legitimate dating service. Disclaimers do not necessarily defeat reliance, at least where the wealth of information is intended to create a false impression and the disclaimer is not as prominently referenced as the material giving the false impression. <u>See, e.g.</u>, <u>United States v. Yarnell</u>, 129 F.3d 1127, 1134 (10th Cir. 1997); <u>Williams v. Gerber Prods. Co.</u>, 552 F.3d 934, 939-40 (9th

Cir. 2008) ("We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."). Here, although users were specifically directed to an "Online Cupids" section of the TAC, the phrase "Online Cupids" has no inherent meaning that would alert users to the use of fictitious profiles. Put differently, if Defendants were really interested in warning users that the website was not a legitimate dating service the hyperlink might have read, for example, "THIS WEBSITE USES FICTITIOUS PROFILES – READ THIS DISCLAIMER" or "THE MAJORITY OF PROFILES YOU SEE WILL NOT CORRESPOND TO ACTUAL WOMEN – READ THIS DISCLAIMER" or some other message that would reasonably lead a person considering joining the site to actually review the critical section.

Accordingly, Plaintiffs have adequately pleaded reliance notwithstanding the TAC.

### 2. The Fraud Claim is Pleaded with Adequate Particularity

Defendants also argue that Plaintiffs have failed to plead fraud with requisite particularity. The fraud claim consists of three temporal phases: (1) Plaintiffs were fraudulently induced to visit the website;[3] (2) Plaintiffs were fraudulently induced to obtain fee-paying memberships; and (3) Plaintiffs were fraudulently induced to remain fee-paying members. Defendants are on sufficient notice to satisfy Rule 9 with respect to phases 2 and 3, and Plaintiffs have adequately pleaded each Defendants' involvement by pleading a plausible scheme involving all Defendants acting in concert.

#### a. General Fraud Allegations

As a threshold matter, Plaintiffs assert that advertising and spam directing people to the website, the home page of the website, and emails from other "users" all give the false impression that the website is a legitimate dating service when that is not the case.

For example, Plaintiffs allege that (1) "Defendants' services are entirely fake and are incapable of intermediating true communications between possible dating partners," Compl. ¶

---

[3] Plaintiffs allege a series of interconnected websites all either leading back to the primary offending website or sharing a common database with that site. For simplicity sake, the following discussion refers to a single website.

5

485; (2) Defendants misrepresented and continue to misrepresent that fake profiles would be clearly marked OC where the majority of the female profiles are fake and not marked, id. ¶ 486; (3) Defendants misrepresented that certain "Verified" profiles correspond to actual people when they are fake, id. ¶¶ 487-88; and (4) Defendants misrepresented and continue to misrepresent that the fake unmarked profiles are real people and engaged in email correspondence via these fake profiles for the purpose of inducing Plaintiffs to remain fee-paying members, id. ¶¶ 489-90.

* * *

Further, the Complaint includes allegations specific to each named Plaintiff and putative class representative.

### b. The Allegations Regarding How Plaintiffs Were Drawn to the Website are Not Sufficiently Pleaded

With respect to how allegedly false advertising drew Plaintiffs to the website in the first place, representative allegations include the following:

- BADELLA first became aware of the AmateurMatch "dating" service in our about December of 2008 by writings, signs, signals, and pictures transmitted or caused to be transmitted on behalf of the AmateurMatch Enterprise by DENIRO and HENNING by means of wire communication, in particular, by transmission of pop-up advertisements generated by DENIRO and HENNING's DatingGold.com to BADELLA's computer.

- None of the advertising for any of the AmateurMatch Website disclosed in any way that at least some of the profiles of the "women" on the AmateurMatch Websites are fake.

Compl. ¶¶ 224-225. These allegations are insufficient under Rule 9. Plaintiffs do not allege the particulars of the "writings, signs, signals, [or] pictures" that drew Badella to the website in the first place. Id. Thus, Defendants' motion to dismiss is GRANTED without prejudice to the extent the fraud claim is based on falsely inducing Plaintiffs to visit the website.

### c. The Allegations Regarding How Plaintiffs Were Induced to Sign Up For Free and then Fee-Paying Memberships Are Plausibly Pleaded

With respect to how misrepresentations induced Plaintiffs to first obtain free and then subsequently obtain paying memberships, Plaintiffs allege, among other things, the following:

6

- Once attracted, consumers are lured into one of the dozens of purported adult-dating websites by fraudulent signage and fake testimonials.

- [Once at the homepage] the consumer sees a dynamically generated "home page" tailored to that individual's geographic area – i.e., displaying pictures of attractive women whom the consumer could presumably meet by signing up for a membership to the AmateurMatch Dating Website. All profiles, however, that appear on the home screen are fictitious.

- The signage on the website's home page is just as misleading. [T]he website purports to be "THE SEXIEST ADULT DATING COMMUNITY," which suggests the website actually promotes "dating" even though actual meetings will never – and indeed *can never* – take place between paying members and the *fake profiles* in the AmateurMatch Enterprise's database.

- Immediately upon joining as a free member, the user is hit with a barrage of pre-written messages that *appear* to be coming from real, attractive, and often scantily-clad women who claim to have a great deal in common with, and want to meet, the new member, often promising sex.

- These messages, however, are not from real women; they are automated messages sent for the purpose of deceiving the consumer into purchasing a recurring monthly subscription to the dating website.

- BADELLA immediately began receiving writings, signs, signals, and pictures transmitted or caused to be transmitted on behalf of the AmateurMatch Enterprise by DENIRO and HENNING by means of wire communication, in particular, by transmission of automated messages purportedly from attractive females in his area, but actually from fictitious profiles.

- These messages were complete fictions, fraudulently represented to be from real individuals.

Compl. ¶¶ 41, 57, 43-44, 227-228. Unlike the allegations regarding what induced Plaintiffs to go to the website in the first place, these allegations are sufficient under Rule 9. Indeed, Plaintiffs have attached to the Complaint a screen-shot of the homepage showing the allegedly fake profiles and user testimonials and examples of the sorts of messages a new user would receive. Compl. Ex. B-C. Thus, Plaintiffs allege not only the way in which the "writings, signs, signals, and pictures" were false and/or misleading – they were "complete fictions, fraudulently represented to be from real individuals" – but also roughly when and where the

7

messages were sent (on the homepage and to the user right after he obtains a free membership) and examples of specific false messages on the homepage and sent to the user. Id. Thus, the fraud claim is sufficiently pleaded to the extent it is based on Defendants' conduct that allegedly induced Plaintiffs to obtain fee-paying memberships once they visited the website.

### d. The Allegations Regarding How Plaintiffs Were Induced to Remain Fee-Paying Members Once Signing Up Are Plausibly Pleaded

Finally, with respect to the misrepresentations that caused Plaintiffs to remain fee paying members, Plaintiffs provide even more detail. For example:

- After becoming a registered paying user, BADELLA continued to receive writings, signs, signals, and pictures, transmitted or caused on behalf of and for the benefit of the AmateurMatch Enterprise by RICO Conspirators DENIRO and HENNING . . . .

- During his membership, BADELLA received hundreds of fraudulent messages, included automated messages, sent from (1) Unmarked, (2) Marked, and (3) "Verified" but fictitious profiles, as well as (4) automated messages from Web-Cam girl profiles.

- For example, on or about January 3, 2010 BADELLA received a message by means of electronic transfer of messages with a fictitious Unmarked profile bearing the name "ridin_hard70."

- BADELLA, believing the message originated from an actual person[,] responded by wishing "ridin_hard70" a happy new year.

- An agent and/or employee of DENIRO and HENNING responded with "thank you babe, happy new year to you too. I hope we will stay in touch and meet soon."

- BADELLA received an electronic transmission by wire on or about January 19, 2010, from a fictitious Marked profile bearing the name "roastedayla" stating: "Just looking for someone who might be interested in exchanging some sexy emails and perhaps hanging out sometime. Interested?"

Compl. ¶ 232, 265, 267-269, 273. The allegations concerning the misleading communications that induced Plaintiffs to keep their paid memberships active are sufficiently detailed under Rule 9.[4]

### e. The Defendants' Respective Roles are Identified with Acceptable Particularity

Plaintiff has alleged the existence of at least dozens of websites owned or controlled by Defendants and, in particular, Defendant Henning. Compl. ¶¶ 123-148. Taking all those allegations as true and construing them in the light most favorable to Plaintiffs, they set forth a plausible theory of liability whereby Henning controls Defendants in perpetuating a massive fraud designed to deceive mostly male customers into believing they are joining a real internet dating site when they are not.

It is true that Plaintiffs do not always specify in exacting detail each individual Defendants' role in the scheme, but they do allege enough to make it plausible to believe Defendants are acting in coordination at Henning's direction. For example, Plaintiffs allege that (1) Henning is Deniro's "alter ego"; (2) Defendants Jones, Modena, Piranha, and Deltabreeze have at times operated amateurmatch.com and/or several associated websites; (3) all the websites actually exist on the same servers operated from a single computer network; and (4) users end up joining the same website with the same database regardless of which website they actually sign up with.

\* \* \*

In sum, Plaintiffs have stated a fraud claim with adequate particularity from the point at which the user is induced to obtain a free, basic membership. However, Plaintiffs have not satisfied Rule 9 with respect to the initial inducement to visit the website in the first place. Thus, as to the fraud claim, Defendants' motion to dismiss is GRANTED without prejudice

---

[4] With the exception of Plaintiff Shane-York, the allegations from the other named Plaintiffs as to allegedly fraudulent and misleading communications designed to induce them to remain paying members are similarly pleaded and include examples of allegedly false or misleading communications. As to Shane-York, the allegations regarding how he was induced to stay a fee paying member are similar to the more general allegations regarding false or misleading writings, signs, signals, and pictures. On the whole, though, the fraud is plausibly pleaded, and the Court declines to carve out Plaintiff Shane-York at this time.

9

insofar as it is based on an inducement to visit one or more of the offending websites but DENIED in all other respects.

### C. Civil RICO Claims

Defendants argue that Plaintiffs have failed to plead civil RICO claims because they fail to allege (1) predicate acts with sufficient particularity; (2) conduct of a RICO enterprise; or (3) a RICO conspiracy.

Under RICO, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "To state a claim under § 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Odom v. Microsoft Corp., 486 F.3d 541, 547 (9th Cir. 2007) (en banc). A " 'pattern' . . . requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). "'[R]acketeering activity' is any act indictable under several provisions of Title 18 of the United States Code, and includes the predicate acts of mail fraud, wire fraud and obstruction of justice." Turner v. Cook, 362 F.3d 1219, 1229 (9th Cir. 2004).

#### 1. Plaintiffs Have Sufficiently Alleged Predicate Acts

Plaintiffs have plausibly and with sufficient particularity pleaded the predicate acts of wire fraud, access device fraud, and money laundering. Defendants are alleged to have used the wires, and the other allegations necessary to establish wire fraud are those Plaintiffs have made regarding the fraud itself. See 18 U.S.C. § 1962(c), (d); 18 U.S.C. § 1343. As to access device fraud, the allegations in addition to the fraud itself include that "the AmateurMatch Enterprise has set up numerous business entities, including certain DOES 1-100 herein ("Merchant Account DOES"), to fraudulently obtain merchant accounts . . . ." Compl. ¶ 432. Further, the Complaint provides the names under which some of these Merchant Account DOES do business. See Compl. ¶ 433 ("The Merchant Account DOES do business under names (real or fictitious) including ttbill.com, matchbilling.com, billingsiteppro.com,

10

yourdatebill.com, lapymt.com, ctypymt.com, [etc.]"). "[I]t strains credulity to believe that [Defendants] did not" use access devices for the purposes of processing credit card payments, and if everything else Plaintiffs say is true, such access was improper within the meaning of the predicate act statutes. See 18 U.S.C. § 1029. Moreover, such allegations are sufficient to put Defendants on notice of the particular conduct alleged. See Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). Likewise, given the particularity with which the fraud itself is pleaded, Plaintiffs' predicate act of money laundering is plausibly pleaded as well. 18 U.S.C. § 1956.

### 2. The Remaining RICO Elements are Plausibly Pleaded

Plaintiffs also plausibly plead the existence of an enterprise and a conspiracy.

Plaintiffs have alleged the existence of several companies acting together in furtherance of the scheme; this satisfies the requirements for alleging an enterprise. 18 U.S.C. § 1961(4) (an "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.").

The conspiracy allegation is also plausible because, assuming the veracity of the Complaint's allegations, it is plausible to believe that these companies are acting in concert upon an agreement to do so.

### D. Unsolicited Commercial Email Claim

Plaintiffs' Unsolicited Commercial Email claim is barred by the applicable one-year statute of limitations for statutory penalties. See Asis Internent Serv. v. Consumerbargaingiveaways, LLC, 622 F. Supp. 2d 935, 944 (N.D. Cal. 2009) (one-year limitations provision for statutory penalties; Hypertouch, Inc. v. Azoogle.com, Inc., 2010 WL 2712217 (9th Cir. 2009) (same). Thus, this claim is dismissed with prejudice.

### E. Plaintiff's Remaining State Claims are Viable

Defendants' objections to Plaintiffs' remaining state law claims turn in large measure on their assertion that Plaintiffs' fraud claim is not viable. Because this Court has held otherwise, there is no basis to dismiss Plaintiffs' other state law claims at this time.

11

### F. Conclusion Regarding Motion to Dismiss For Failure to State a Claim

Defendants' motion to dismiss for failure to state a claim is DENIED with two exceptions. First, the Unsolicited Email claim is dismissed with prejudice because it is time barred. Second, the fraud claim is dismissed without prejudice to the extent it is based on advertising or other communications that allegedly drew Plaintiffs to the website in the first place. If Plaintiffs wish to base their fraud claim on inducement to visit the websites, they shall file an amended complaint on or before February 7, 2011.

## II. Motion to Dismiss For Lack of Personal Jurisdiction

Defendants Deltabreeze and Modena Marketing have moved to dismiss for lack of personal jurisdiction. Both these Defendants are foreign companies, and they claim to have little if any connection to the United States, California, or this dispute. Plaintiff alleges that, to the contrary, Deltabreeze and Modena each operates websites associated with the fraud either by way of advertising or by running ostensibly separate sites that actually bring the user to the primary offending website. See Compl. ¶¶ 135, 143 ("All of DELTABREEZE's '.net' domains, however, use the same backend database and algorithms as the DENIRO '.com' counterparts."), 144 ("[I]f an individual joins DELTABREEZE's amateurmatch.net or romancer.net, he is actually joining the same website as DENIRO's amateurmatch.com or romancer.com"), 145 ("There are also dozens of domain names owned by each of the defendants that simply direct users to amateurmatch.com"); 146 ("By way of example, MODENA owns domain names ammessages6.com and A-M-7.com. If a user enters www.A-M-7.com into an Internet browser, the user is automatically redirected to DENIRO and HENNING's amateurmatch.com website.").

Defendants all but concede that Plaintiffs allegations, taken as true, would be sufficient to support personal jurisdiction. See Reply to Opp'n to Mot. to Dismiss at 1 ("Plaintiffs' argument in favor of jurisdiction is based upon factual allegations they cannot support."). Thus, rather than make a decision on an incomplete factual record, the Court hereby DEFERS ruling on the jurisdictional question pending jurisdictional discovery. The parties are to

1  complete the jurisdictional discovery on or before April 4, 2011.  If Defendants still believe
2  after jurisdictional discovery has been completed that there is no basis for exercising personal
3  jurisdiction over them, they can re-notice their motion to dismiss.

**IT IS SO ORDERED.**



Dated: January 24, 2011

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE