United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ROBERT BADELLA, ET AL.,

      Plaintiffs,

  v.

DENIRO MARKETING LLC, ET AL.,

      Defendants.

_____/

No. C 10-03908 CRB

**ORDER DENYING MOTION FOR CLASS CERTIFICATION AND MOTION TO AMEND COMPLAINT**

This is a putative class action purportedly involving a vast, fraudulent scheme centered around an internet dating website that allegedly lures "often lonely and vulnerable men into joining and continuing to pay for subscriptions [to the websites] with the false promise that they are communicating with real women in their area who are interested in dating and/or intimate relationships." Compl. ¶ 38. In reality, according to Plaintiffs, the website is fraudulent, and few if any of the women on the site are real.

Plaintiffs wish to certify a class defined as follows: "Badella, Plaintiffs and all other men who joined as paying members of the Amateur Match Websites on or after four years before the day of filing of the Complaint (i.e., on or after August 31, 2006) to and through the time of trial, excluding the Defendants and their employees, legal representatives, assigns, successors, and any entity in which Defendants have a controlling interest; counsel for Plaintiffs; and Court personnel and their immediate families." Motion for Class Certification ("Mot.") (dkt. 72) at 8-9.

1    Before the Court are Plaintiffs' motions for (1) class certification and (2) to amend

2    their complaint.  Since Plaintiffs missed the February 7, 2011 deadline set in the Court's

3    order regarding the motions to dismiss for amending the complaint (dkt. 42) by eight months,

4    the motion to amend the complaint is DENIED.

5          The Court DENIES class certification because of the possibilities of individual issues,

6    concerns about adequacy and superiority, and lack of a trial plan.  The Plaintiffs may renew

7    the motion on the briefing schedule set out by the Court.

8    **I.    FACTUAL BACKGROUND**

9          Defendants own and operate dozens of allegedly fraudulent "adult dating" websites.

10   Compl. ¶ 27.  These websites are allegedly fraudulent in that they are "built upon a huge

11   database of fake user profiles specifically designed to deceive consumers into paying to join

12   and continue using" the sites.  Id. ¶ 31.

13         Generally speaking, Plaintiffs state the scheme works as follows.  First, people are

14   attracted to the websites via spam, internet pop-up ads, or social networking scams.  Id. ¶ 40.

15   Next, the potential users see "fraudulent signage" and "fake testimonials" and are offered a

16   free trial membership.  Id. ¶ 41-42.  Once the individual obtains the free membership, he (it is

17   typically although not always a man) receives "a barrage of pre-written messages that appear

18   to be coming from real, attractive, and often scantily-clad women who claim to have a great

19   deal in common with, and want to meet, the new member, often promising sex."  Id. ¶ 43, 45.

20   In reality, these messages are automated and sent for the purposes of inducing the individual

21   to purchase a fee-paying membership (costing between $25 and $30 per month), which is the

22   only way he can respond to the messages he received.  Id. ¶ 44, 67, 73-77, 81.

23         The fraud continues even after someone obtains a fee-paying membership.  For

24   example, users are "upsold" memberships to other equally fake websites that purportedly

25   increase their chances of meeting women.  Id. ¶ 82-85.  Further, paying members will

26   continue to receive multiple messages every day from numerous fictitious profiles, some of

27   which are marked with "a nearly imperceptible 'OC,'" (Online Cupid), which a user who had

28   read the Terms and Conditions ("T&C") upon signing up would know meant that the profile

United States District Court
For the Northern District of California

1    associated with the message was not real.  Id. ¶ 85.  But most of fake profiles and messages

2    are allegedly not properly identified as coming from OC's, and indeed even some of the

3    supposedly "Verified" profiles are fake.  Id. ¶¶ 94, 99-110.  To make the fraud more

4    compelling, Defendants do not rely merely on canned or automated messages to perpetuate

5    it.  Rather, they "employ actual individuals who control hundreds of fictitious profiles

6    (Marked, Unmarked, and Verified), and respond to messages sent from users in response to

7    the automated messages."  Id. ¶ 111.

8         Defendants argue Amateur Match is an adult entertainment website that offers many

9    valuable services to its paid users, including the ability to: (1) view all profiles and photos;

10   (2) send and receive unlimited messages; (3) send instant messages; (4) get full access to live

11   video chats, where members can interact with each other via the webcams on their

12   computers; (5) create private and one-on-one chats with other users; (6) view private and

13   public chats; (7) view and interact with featured performers (good looking women who

14   perform sexual acts in real time via a webcam; users can chat with the performer and request

15   that she perform specific actions); (8) fully access a vast library of adult videos featuring the

16   biggest stars in adult entertainment; and (9) play online adult games.  Opp'n at 2 (dkt. 99),

17   citing Declaration of Allan Henning in support of Opposition to Motion for Class

18   Certification ("Henning Decl.") (dkt. 100) ¶ 10, Exs. 1, 2.[1]  Thus, Defendants argue members

19   use the site for many different purposes.  Plaintiffs dispute this, stating the primary "non-

20   dating" feature Defendants point to (the "Web Cam Club"), is merely a link from the

21   homepage to a separate website found at <www.webcamclub.com> and does not require

22   membership to Amateur Match to access.  Garbarini Declaration in support of Reply

23   ("Garbarini Reply Decl.") (dkt. 106) ¶ 8.

24        Defendants argue that based on profiles submitted to Amateur Match since August 31,

25   2006, 619,022 Amateur Match users are registered as females, and 125,227 are registered as

26

27       _____

28        [1]  Defendants filed the Henning Declaration under seal, but did not file the Opposition
     under seal.  Thus, Defendants have waived the confidentiality of any information from the
     Henning Declaration that is quoted in the Opposition.  This order only cites to information from
     the Henning Declaration that was included in the publicly-filed Opposition.

United States District Court
For the Northern District of California

1  couples.  Henning Decl. ¶ 13.  Defendants argue that according to industry accepted

2  standards for monitoring web-traffic, 30%-33% of Amateur Match's U.S. visitors are female.

3  Henning Decl. ¶¶ 14, 16.  Plaintiffs argue they will be able to demonstrate "to a statistical

4  certainty that the number of real women on [Amateur Match] at any given time is *de*

5  *minimus*."  Reply at 4, citing Garbarini Reply Decl. at ¶ 8.

6       Named Plaintiff and class representative Bradley Aug was dismissed from this action

7  on July 5, 2011.  Ferguson Declaration in support of Opposition to Motion for Class

8  Certification ("Ferguson Decl.") (dkt. 54) ¶ 3, Ex. 2.  Following his deposition, class

9  representative Febus dismissed his claims on July 26, 2011, at the Court entered the dismissal

10  on July 27, 2011.  Id. ¶ 4, Ex. 3.

11       Badella signed up for a Basic membership with Amateur Match on December 19,

12  2008.  On December 21, 2008, Badella upgraded to Premier membership.  On May 14, 2009,

13  Badella cancelled his membership without explanation.  On July 8, 2009, Badella renewed

14  his membership and purchased a Premier VIP membership.  On February 14, 2010, Badella

15  emailed Amateur Match to request cancellation of his membership, explaining in an email

16  that "I wish to cancel my membership with Amateur Match as I have not gotten any positive

17  responses from this website."  Henning Decl. ¶ 20, Ex. 7.  Badella did not request a refund.

18  Id.

19       Plaintiffs moved for class certification on September 23, 2011.  Dkt. 72.  Plaintiffs

20  filed a second motion for leave for leave to file a first amended complaint on September 30,

21  2011.  Dkt. 75.

22  **II.    LEGAL STANDARD**

23       Plaintiffs bear the burden of proving that certification is appropriate.  See Hawkins v.

24  Comparet-Cassani, 251 F.3d 1230, 1238 (9th Cir. 2001).  District courts are to rigorously

25  analyze whether the class action allegations meet the requirements of Rule 23.  General Tel.

26  Co. of the Sw. v. Falcon, 457 U.S. 147, 161 (1982).  "Because the early resolution of the

27  class certification question requires some degree of speculation, however, all that is required

28  is that the Court form a 'reasonable judgment' on each certification requirement.  In

formulating this judgment, the Court may properly consider both the allegations of the class

action complaint and the supplemental evidentiary submissions of the parties."  In re Citric

Acid Antitrust Litig., No. 95-1092, C-95-2963, 1996 WL 655791, *2 (N.D. Cal. Oct. 2,

1996) (citing Blackie v. Barrack, 524 F.2d 891, 900-901 & n.17 (9th Cir. 1975)).  Motions

for class certification should not become occasions for examining the merits of the case.

See Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 293 (2d Cir. 1999).

**III.   DISCUSSION**

Federal Rule of Civil Procedure 23 establishes a two-step procedure for analyzing

class certification.  First, the following four requirements of Rule 23(a) must be satisfied: (1)

numerosity, (2) common questions of law or fact, (3) typicality, and (4) adequate

representation.  Once those four requirements are met, plaintiffs must show that the lawsuit

qualifies for class action status under Rule 23(b).  Plaintiff here seeks to certify the class

under Rule 23(b)(3).  See Mot. at 11.  This Order therefore addresses first the requirements

of Rule 23(a) and then the requirements of Rule 23(b).

    **A.   Rule 23(a) Requirements**

Defendants dispute that Plaintiffs have satisfied three of the four Rule 23(a)

requirements.

       **1.   Numerosity**

First, the requirement of numerosity is that the class be so numerous that joinder of all

members individually would be impracticable.  See Fed. R. Civ. P. 23(a)(1); Staton v.

Boeing, 327 F.3d 938, 953 (9th Cir. 2003).  "Although there is no exact number, some courts

have held that numerosity may be presumed when the class comprises forty or more

members."  See Krzesniak v. Cendant Corp., No. 05-05156, 2007 WL 1795703, at *7 (N.D.

Cal. June 20, 2007).  Here, the proposed class is alleged to comprise hundreds of thousands

at the least, and possibly millions of members at the most, and so Plaintiffs meet this

requirement.  See Mot. at 9.

United States District Court
For the Northern District of California

### 2.    Commonality

Second, the requirement of commonality demands that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The requirements for showing commonality are "minimal."  See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998).  The showing required for Rule 23(a)(2) is "less rigorous" than the related requirements of Rule 23(b)(3) (discussed below).  See id. at 1019-20.  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  Id. at 1019.  Notably, despite the "permissive[]" standard, id., commonality was a hurdle the plaintiffs in the recent Wal-Mart Stores, Inc. v. Dukes, 564 U.S. —, 131 S. Ct. 2541, 2551 (2011) could not clear. The Court explained in that case: "What matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."  Id. (emphasis in original).

The main issue here is the question of reliance as an element of many of Plaintiffs' claims.  Plaintiffs allege common factual and legal allegations make up the vast majority, if not all, of the present case – alleging that all class members were induced to subscribe and pay for an internet dating service that was completely fraudulent.  Compl. ¶¶ 37-44. Plaintiffs claim there are four overarching class-wide questions: (1) Are the Amateur Match "dating" websites a complete sham? (2) Were the Class Members induced into joining, and remaining members, of the Amateur Match Websites through false advertising and false pretenses and statements? (3) Are Defendants insulated from liability by the Terms and Conditions for the websites? (4) What is the proper measure of damages?  Mot. at 2. Plaintiffs allege all class members were lured in with "bot" messages from user profiles purporting to be real women and that all members communicated with the same database of fictitious profiles.  Id. ¶¶ 53-68, 73-79.  In addition, Plaintiffs allege that since all claims

arise from the same legal theories, e.g., RICO, fraud, negligent misrepresentation, the commonality requirement is met. Mot. at 11.

Defendants respond that Plaintiffs fail to offer facts to show the alleged common questions are susceptible to common proof, nor do they attempt to offer any common answers that could result from a single proceeding. Opp'n at 7. For example, Defendants argue Plaintiffs' common questions depend on the erroneous assumption that each member experienced the same injury and the same damages as alleged in the Complaint, but that Plaintiffs provide no proof for this, and that the disclosure of Online Cupids and the existence of real women on the site show Plaintiffs cannot establish that the question of whether any given member was deceived could ever be subject to common proof.

Defendants reiterate this point by arguing that a member's individual reasons for joining and continuing to subscribe to Amateur Match will be impossible to ascertain. Moreover, Defendants argue Plaintiffs cannot show each putative class member was subject to false or misleading messages, nor that any member was not satisfied with the membership. Opp'n at 9. In support, Defendants point to the fact that 44% of members do not cancel membership after the first month, and that 14% of members who leave return to rejoin the site at some point. Henning Decl. ¶¶ 13-14.

Defendants also argue that the existence of affirmative defenses based on the T&C defeats commonality because Plaintiffs cannot establish whether or not each putative class member even read the T&C (where the use of fake messages was disclosed), and if so, what affect, if any, the T&C had on their decision to purchase services. Opp'n at 10. While some of these issues may be important, Defendants again miss the point this Court made in ruling on the Motion to Dismiss. Since Plaintiffs allege that many of the fake messages were not marked with the "OC," – even though the T&C stated fake messages would be so marked – whether the individual read the T&C is not necessarily relevant. Even if all class members did read the T&C, it did not explain the allegedly affirmative misrepresentation of messages from fake profiles that were not marked.

7

United States District Court
For the Northern District of California

Thus, Defendants focus on their argument that reliance is unreasonable per se because of the T&C disclosures. Moreover, Defendants argue the individual determination of whether a class member read the T&C is paramount. This is not necessarily so. Given the allegations of many false unmarked messages, the T&C is no dispositive.

While this is a close question, there are common questions of law and fact regarding whether the Defendants had a widespread practice of sending out fake messages that were unmarked (in violation of the T&C), and induced membership or continued membership in the site through such affirmative misrepresentations along with the alleged misrepresentations on the homepage of the website. Thus, Plaintiffs have met the commonality requirement.

### 3.    Typicality

Third, the requirement of typicality is met if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Representative claims need only be "reasonably co-extensive with those of absent class members; they need not be substantially identical." See Hanlon, 150 F.3d at 1020. Plaintiff Badella claims he is typical because he, like every other class member, believed he was joining a dating website, when in fact, he was not. Reply at 6. Plaintiffs argue there is not conduct unique to any individual class member. Defendants argue the same reasons there is not commonality defeat typicality. Plaintiff's reasons for joining Amateur Match – to meet and have sex with women (Compl. ¶¶ 228-229) and experiences with the service (including the number of messages that he received, the content of the messages, and whether they were actually from real women) will vary for each member of the putative class, and thus, Plaintiff's experiences and claims are not typical. Opp'n at 11-12. While Defendants bring up serious issues addressed in more detail below, Plaintiff has demonstrated his claims are reasonably co-extensive with those of absent class members.

### 4.    Adequacy

Fourth, the requirement of adequate representation asks whether the representative "will fairly and adequately protect the interests of the class." See Fed. R. Civ. P. 23(a)(4).

Courts are to inquire (1) whether the named plaintiffs and counsel have any conflicts of interest with the rest of the class and (2) whether the named plaintiff and counsel will prosecute the action vigorously for the class. See Hanlon, 150 F.3d at 1020. Defendants base their challenge to adequacy on an allegation that the suit is "collusive," but this claim appears baseless.

The Court does have some concerns though with the presentation of this case. Class counsel presents no declaration regarding any experience in handling class actions, nor any type of trial plan at all for handling this nationwide class action. While Plaintiff's counsel did attach some declarations and exhibits to its Reply, they failed to do so in support of their original Motion. Counsel still does not present any statements of resources and qualifications for undertaking such a large suit, nor any trial plan. See Gartin v. S&M Nutel LLC, 245 F.R.D. 429, 441 (C.D. Cal. 2007) (citing concern because "[n]either Plaintiff nor her counsel has provided any suggestions–much less a plan–to this Court regarding managing the proposed class action."). This, in conjunction with both the lack of any evidence provided from any other putative class members regarding their experience with Amateur Match, and the problems identified with predominance discussed below, cause the Court to deny the motion for class certification.

## B.  Rule 23(b)(3) Requirements

In addition to the elements of Rule 23(a), a plaintiff must also demonstrate that the action can be appropriately certified under Rules 23(b)(1), (b)(2), or (b)(3). Plaintiffs here seek to certify the class under Rule 23(b)(3). See Mot. at 16. To do so, Plaintiffs must establish that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." See Fed. R. Civ. P. 23(b)(3). This memo addresses first the issue of predominance and then the issue of superiority.

### 1.      Predominance

Mere commonality pursuant to Rule 23(a)(2) is insufficient to meet Rule 23(b)(3)'s predominance requirement. See Hanlon, 150 F.3d at 1022. Rule 23(b)(3) instead concerns "the relationship between the common and individual issues. 'When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis.'" Id. (citing Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed. 1986)). "Because no precise test can determine whether common issues predominate, the Court must pragmatically assess the entire action and the issues involved." Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474, 489 (E.D. Cal. 2006). "Common questions may predominate where the resolution of a question common to the class would significantly advance the litigation." Id.

Here again the issue of reliance has the potential to make individual issues overwhelm the common questions.

### a.      RICO Claims

Plaintiff argues it is unnecessary to prove reliance for claims under RICO, and thus, this is not a barrier to predominance, citing Bridge v. Phoenix Bond and Indemnity Co., 128 S. Ct. 2131 (2008). Plaintiff misreads Bridge. While Bridge did state that first person reliance is not a required element of a civil RICO claim based upon mail or wire fraud, it did not hold that no type of reliance was needed at all for those claims. A Northern District of New York case clearly distinguished Bridge from the type of situation we have here:

> While this Court acknowledges the rule enunciated in Bridge, the problem for Plaintiffs is that they do allege that they relied on Defendant's claimed misrepresentations and that it was this first-person reliance that caused them to sustain damages. Thus, this case is unlike Bridge where third-party representations caused damage to the plaintiff. This is a classic first-party reliance case. Plaintiffs have not adequately explained how or why removing reliance as an element of the RICO claim becomes irrelevant to the class certification determination (or to its RICO claims). While first-person reliance may not be an essential element of the RICO claims, it remains a central focus of the allegations and claims in this case (including the common-law and RICO claims). Accordingly, reliance continues to be a predominant issue in this case and the holding in Bridge does not constitute a change in controlling law that warrants reconsideration of the motion for class certification or would otherwise warrant certification of the issues requested by Plaintiffs.

10

United States District Court
For the Northern District of California

1      <u>Dungan v. The Academy at Ivy Ridge</u>, No. 06-0908, 2008 WL 2827713, at *3

2  (N.D.N.Y. July 21, 2008).

3      This is exactly the situation here.  Plaintiffs allege first-party reliance throughout the

4  Complaint: "Badella, in reliance on the representations contained in the fraudulent messages,

5  believed that real female users of the website were interested in meeting him, so Badella

6  elected to come a registered, paying amateurmatch.com user."  Compl. ¶ 229.  "Badella

7  became a member of amateurmatch.com, and remained a member of amateurmatch.com on

8  the date of this charge on direct reliance of the misrepresentations contained in the messages

9  made through the fictitious profiles on amateurmatch.com" Compl. ¶ 242.  Thus, Plaintiffs'

10  argument on this point is unavailing.  Demonstrating reliance is still an issue for the claims as

11  alleged by Plaintiffs and brings up the problem of individualized issues predominating.

12                  **b.**     **Remaining Claims**

13      Reliance is also an element of fraud, negligent misrepresentation, a CLRA violation.

14  <u>See</u> <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1105 (9th Cir. 2003) (fraud); <u>Cadlo v.</u>

15  <u>Owens-Illinois, Inc.</u>, 125 Cal. App. 4th 513, 519 (2004) (negligent misrepresentation); <u>Zeisel</u>

16  <u>v. Diamond Foods, Inc.</u>, No. 10-1192, 2011 WL 2221113, at *10 (N.D. Cal. June 7, 2011)

17  (CLRA).[2]

18      Plaintiffs argue the element of reliance does not cause individual issues to

19  predominate because the court can presume reliance by all class members.  This is because

20  Plaintiffs allege the same material misrepresentations were communicated to each class

21  member.  <u>See</u> <u>Jenson v. Fiserv Trust Co.</u>, 256 F. App'x 924, 926 (9th Cir. 2007) ("[T]he

22  court continued to recognize that when the same material misrepresentations have been

23  communicated, an inference of reliance may arise as to the entire class.") (citing <u>Mirkin v.</u>

24  <u>Wasserman</u>, 5 Cal. 4th 1082, 1095 (1993)); <u>see also</u> <u>In re First Alliance Mortg. Co.</u>, 471 F.3d

25  977, 991 (9th Cir. 2006) ("Class treatment has been permitted in fraud cases where, as in this

26

27          [2] This is not an issue for the UCL claim.  "Unlike a common law fraud claim, a UCL

28  fraud claim requires no proof that the plaintiff was actually deceived. . . . Instead, the plaintiff must produce evidence showing a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." <u>Zeisel</u>, 2011 WL 2221113, at *9. This would be susceptible to common proof.

United States District Court
For the Northern District of California

1  case, a standardized sales pitch is employed.").  Plaintiff argues this applies here because

2  each class member was exposed to the material misrepresentation of the Amateur Match site

3  being a real dating website as advertised on the homepage. While it is true that all members

4  would have been exposed to any material misrepresentations on the website homepage, each

5  class member would have been exposed to different individual messages from women that

6  were allegedly fake.

7      There is also seemingly conflicting Ninth Circuit precedent on this issue.  The Circuit

8  has stated a presumption of reliance should only apply in certain types of situations.  In

9  Poulos v. Caesars World, Inc., 379 F.3d 654, 666 (9th Cir. 2004), the Ninth Circuit stated

10  "[t]he shortcut of a presumption of reliance typically has been applied in cases involving

11  securities fraud and, even then, the presumption applies only in cases primarily involving 'a

12  failure to disclose' – that is, cases based on omissions as opposed to affirmative

13  misrepresentations." (emphasis added).  The Court then held the claims at issue were not

14  primarily claims of omission, but rather were claims of affirmative misrepresentations or

15  mixed claims based on both affirmative misrepresentations and omissions.  Id. at 667.  The

16  Court concluded that "[b]ecause the allegations here cannot be characterized primarily as

17  claims of omission, the Class Representatives are not entitled to Binder's presumption of

18  reliance."  Id.

19      Here, the claim is based on the affirmative misrepresentation that Amateur match is a

20  dating site, see Mot. at 22, or at the very least a mixed representation, which under Poulos,

21  would indicate there should not be a presumption of reliance.  On the other hand, under the

22  language of Jensen and In re First Alliance, such material misrepresentations (assumedly

23  affirmative misrepresentations) would allow for an inference of reliance.  The seemingly

24  contradictory Ninth Circuit cases do not cite to or discuss each other.

25      California district court cases have also come to different conclusions.  For example,

26  in Gartin, the Central District found the presumption of reliance did not apply to a potential

27  class action asserting claims for fraud, negligence, and consumer protection and unfair

28  competition statutes because "[a]s in Poulos, this case alleges both omissions and affirmative

United States District Court
For the Northern District of California

misrepresentations," and "[t]herefore, even if the presumption were applicable outside the securities context, the presumption would not apply in this case because Plaintiff alleges 'mixed claims.'" 245 F.R.D. 429, 438.  It then denied class certification.  Id.  See also Gonzalez v. Proctor and Gamble Co., 247 F.R.D. 616, 623-24 (S.D. Cal. 2007) (finding under Poulos no presumption because claim based on affirmative misrepresentations, rather than omissions).  Under this standard, Plaintiffs would not be entitled to a presumption of reliance as the misrepresentations are affirmative, or at the least, mixed misrepresentations.  This gives the Court pause.

On the other hand, courts in this district have certified a class in cases based upon a presumption of reliance where there appear to have been affirmative misrepresentations.  In Brazil v. Dell, Inc., No. 07-1700, 2010 WL 5387831 at *5 (N.D. Cal. Dec. 21, 2010), the Court found California courts may infer reliance where the same material misrepresentations have been communicated to the entire class.  In Brazil, there was "no dispute that the alleged misrepresentations were communicated to all class members, because the representations were made at the point of sale as part of a standardized online purchasing process."  Id.  In Wolph v. Acer America Corp., 272 F.R.D. 477, 488 (N.D. Cal. 2011), the Court certified a class when plaintiff contended each class member was exposed to the same alleged misrepresentations on the package at the point of sale.  "A plaintiff need not demonstrate individualized reliance on specific misrepresentations to satisfy the reliance requirement," and "[m]ateriality of the misrepresentation is an objective standard that is susceptible to common proof."  Id.  The Court found plaintiffs had identified common sources of proof beyond the packaging, including expert testimony, and data from defendants return rates and consumer surveys.  Id.  Here, arguably all Plaintiffs were exposed to the same misrepresentations on the homepage of the website (the "point of sale"), though it is not clear how this homepage and its misrepresentations may have changed over time.  Moreover, Plaintiffs here have not pointed to any other common sources of proof besides the text on the home page of the website.  Thus, the cases are only partially analogous.  The Court finds this sufficiently distinguishable to counsel against certifying the class here.

**United States District Court**
For the Northern District of California

Another wrinkle is demonstrated by the analysis in <u>Brazil</u>.  There, the Court then found that "materiality is an objective standard, and is susceptible to common proof in this case."  2010 WL 5387831, at *5 (citation omitted).  There "[p]laintiffs point to common evidence sufficient to show that the representations were material to plaintiffs."  <u>Id.</u>  Plaintiffs here have not actually done this with respect to the class.  Plaintiff Badella appears to allege it was material to him, but does not indicate how he would demonstrate materiality to others.  Materiality is an objective standard, but still, Plaintiffs will need to point to some type of common proof, particularly given Defendants arguments that people join Amateur Match for many different reasons and for many different purposes.  <u>See generally</u> Henning Decl.

Thus, this is a close question.  Given the lack of sufficient demonstration of common proof, and the potential variety among the allegedly fake messages sent to putative class members, along with the potentially different reasons the class members might have joined in the first place, there is not a presumption of reliance and common issues do not predominate.

### c.      Choice of Law Issues

Plaintiffs propose a nationwide class where California law is applied to all plaintiffs.  Mot. at 16-18.  The application of California law to a nationwide class raises due process concerns.  In <u>Phillips Petroleum Co. v. Shutts</u>, the Supreme Court stated that in a nationwide class action, the state whose law is going to be applied "must have a significant contact or significant aggregation of contacts to the claims asserted by each member of the plaintiff class, contacts creating state interests, in order to ensure the choice of [that state's law] is not arbitrary or unfair."  472 U.S. 797, 821-22 (1985) (quotation omitted).  The Court found in that case that "[g]iven Kansas's lack of interest in claims unrelated to that State, and the substantive conflict with jurisdictions such as Texas, we conclude that application of Kansas law to every claim in this case is sufficiently arbitrary an unfair as to exceed constitutional limits."  <u>Id.</u> at 822.  Finally, "[w]hen considering fairness in this context, an important element is the expectation of the parties."  <u>Id.</u>

**United States District Court**
For the Northern District of California

Plaintiff argues applying California law to a nationwide class here is constitutional because the main Defendants, Deniro Marketing and Allen Henning, reside in California, and Henning is also a principal of Defendants Deltabreeze, Modena, and Piranha.  Compl. ¶¶ 12-13, 19.  Moreover, Plaintiff alleges Defendants conduct significant business in California.  Compl. ¶ 26.  Plaintiffs argue California courts have found such contacts sufficient, citing Clothesrigger, 191 Cal. App. 3d at 612-13; Wershba v. Apple Computer, Inc., 91 Cal. App. 4th 224, 242 (2001); and Parkinson v. Hyundai Motor America, 258 F.R.D. 580 (C.D. Cal. 2008).

The test of constitutionality is only the first step of the inquiry.  "[S]o long as the requisite significant contacts to California exist, a showing that is properly borne by the class action proponent, California may constitutionally require the other side to shoulder the burden of demonstrating that foreign law, rather than California law, should apply to the class claims."  Wash. Mut. Bank, FA v. Sup. Ct., 24 Cal. 4th 906, 921 (2001).  Under California's three-step "governmental interest" test, the "foreign law proponent must identify the applicable rule of law in each potentially concerned state and must show it materially differs from the law of California."  Id. at 919.  If the Court finds that the relevant laws of other states are materially different, the Court determines "whether each of the states has an interest in having its law applied to the case."  Clothesrigger, Inc. v. GTE Corp., 191 Cal. App. 3d 605, 614 (1987).  Finally, if the first two requirements are met, thus demonstrating the existence of an actual conflict, the Court must "select the law of the state whose interests would be 'more impaired' if its law were not applied."  Wash. Mut. Bank, 24 Cal. 4th at 920 (citations omitted).  Thus, Plaintiffs have the burden of demonstrating constitutionality of applying California law to the nationwide class.  If they meet this burden, Defendants may then advocate for application of different state law, and Defendants bear the burden on that inquiry.

The arguments made here are similar to those in Parkinson, and the discussion in that case is helpful here as well:

Plaintiffs make a sufficient state contacts showing under Shutts to establish that application of California law comports with due process.  In

15

<u>Clothesrigger</u>, the court found sufficient state contacts where defendant did business in California, had its principal offices in California, a significant number of plaintiffs resided in California, and defendant's agents who prepared advertising and other misrepresentations at issue in the litigation were located in the state. <u>Clothesrigger</u>, 191 Cal. App. 3d at 613. Plaintiffs' allegations are almost identical. Plaintiffs contend that defendant's relevant operations, including its headquarters, marketing department, warranty department, customer affairs department, and engineering department, are located in California. Plaintiffs aver that many of the alleged wrongful acts emanated from defendant's Fountain Valley offices in Orange County, California. <u>See</u> <u>In re Pizza Time Theatre Sec. Litig.</u>, 112 F.R.D. 15, 18 (N.D. Cal.1986). Additionally, plaintiffs allege that defendant conducts substantial business in the state through its fifty California dealerships. Finally, given the volume of California automobile sales and the number of in-state dealerships, plaintiffs claim it is likely that more class members reside in California than any other state. Thus, plaintiffs' alleged contacts are sufficient to satisfy the test under <u>Shutts</u>.

Because plaintiffs show that application of California law is constitutional under <u>Shutts</u>, defendant must show that another state's laws apply under the California governmental interest choice-of-law test. Defendant argues that the laws of the non-forum states are different from those of California, attaching to its opposition an appendix cataloging state-by-state variations involving privity, notice, reliance, scienter, damages, and other elements necessary to plaintiffs' claims. Citing <u>Washington Mutual Bank</u>, defendant next argues that non-forum states have an interest applying their law to litigation involving events that occurred within their borders. Finally, defendant argues that California does not have a greater interest than other states applying its law because the incidents at issue-the individual warranty determinations-occurred in other states and, further, customers would reasonably assume the law of the place of purchase would apply.

While defendant's arguments are persuasive in the context of plaintiffs' warranty claims in that denials of warranty coverage might accurately be described as occurring in the state where repair was sought, they carry less force when applied to plaintiffs' claims under the CLRA and UCL. Plaintiffs allege that the wrongful acts underlying those claims emanated from defendant's California headquarters; defendant does not adequately rebut plaintiffs' showing that the representations or omissions made regarding the Tiburon emanated from California.

Further, "California's consumer protection laws are among the strongest in the country," and relatively recent California state court decisions "hold that a California court may properly apply the same California statutes at issue here to non-California members of a nationwide class where the defendant is a California corporation and some or all of the challenged conduct emanates from California." <u>Wershba</u>, 91 Cal. App. 4th at 244. Thus, the Court does not find a conflict between California's consumer protection laws and the applicable laws of the non-forum states.

Finally, the Court recognizes that extraterritorial application of the UCL is improper where non-residents of California raise claims based on conduct that allegedly occurred outside of the state. <u>See</u> <u>Sullivan v. Oracle Corp.</u>, 547 F.3d 1177, 1187 (9th Cir. 2008). In <u>Sullivan</u>, for example, the Ninth Circuit, citing <u>Norwest Mortgage, Inc. v. Superior Court</u>, 72 Cal. App. 4th 214 (1999), held "that § 17200 does not apply to the claims of nonresidents of California who allege violations of the FLSA outside California." <u>Sullivan</u>, 547 F.3d 1177, 1187. However, extraterritorial application of the UCL is not barred where the alleged wrongful conduct occurred in California. <u>See</u> <u>Norwest Mortgage</u>, 72 Cal. App. 4th at 224-25. In light of defendant's alleged in-state

conduct discussed above, the Court finds that certification of a nation-wide
class for plaintiffs' UCL claim is not barred under the Ninth Circuit's reasoning
in Sullivan. Because defendant does not meet its burden under California's
governmental interest test with respect to plaintiffs' CLRA and UCL claims
and because plaintiffs otherwise make the showing required by Rule 23,
nation-wide certification of these claims is warranted.

Parkinson, 258 F.R.D. 580, 597-99.

Plaintiffs make the same allegations here as are present in Parkinson to demonstrate
that application of California law to a nationwide class would be constitutional. Mot. 16-18.
Yet, Plaintiffs do not present the types of actual evidence regarding Defendants' actions in
California, nor the likelihood of most putative class members in California, nor any
evidentiary indication of the amount of business Defendants do in California that the Court
looked to in Parkinson. Cf. Parkinson, 258 F.R.D. at 598. For example, Plaintiff does not
point to particular proof that the alleged misrepresentations emanated from California,
besides its statement that Deniro and Henning reside in California. There is no evidence the
businesses are run out of California, nor that the marketing policies and decisions regarding
the alleged misrepresentations emanated from California. This may actually be the case, but
Plaintiffs have not met their burden of suggesting and demonstrating it. Thus, the Court is
not convinced that on the evidence provided at this time the application of California law to a
nationwide class would be constitutional. This issue could possibly be mitigated by Plaintiff
requesting a California class rather than a nationwide class.

Defendants' rebuttal regarding the application of other state law is also problematic.
First, Defendant appears to misapprehend the law on this point and contends that it is
Plaintiff's burden to demonstrate the California choice of law test is met, but that is not so.
See Parkinson, 258 F.R.D. at 598. Defendant does provide a similar type of proof to
defendants in Parkinson, attaching to its Opposition a State Law Variations Appendix
demonstrating variation in states' consumer protection statutes. Dkt. 102. This, though,
would be susceptible to the same type of attack found convincing in Parkinson. Given the
Court's finding regarding constitutionality, it need not decide this issue at this time.

United States District Court
For the Northern District of California

1    Another troublesome issue is that the T&C has a choice of law and jurisdictional

2   clause stating "all matters arising out of, or otherwise relating to, this User Agreement shall

3   be governed by the laws of Florida, excluding its conflict of law provisions.  The sum of this

4   paragraph is that any and all disputes, must be, without exception, brought to court and

5   litigated in Orange County, Florida."  Henning Decl. Ex. 1 at XX.A.  Defendants mention

6   this in passing, and also state the November 2010 T&C conveys exclusive jurisdiction to

7   Cyprus.  Opp'n at 22.  Yet, Defendants do not make any argument based on this fact, nor do

8   they seem to be attempting to enforce the provision by moving to transfer the case to Florida

9   or by arguing strongly for the application of Florida law to this case.  Thus, given that at this

10   time the Court finds not enough evidence to support a constitutional application of California

11   law to a nationwide class, it need not decide this issue definitively at this time.

12              **2.     Superiority**

13    Finally, in addition to demonstrating the predominance of common questions, a

14   plaintiff seeking to certify a class under Rule 23(b)(3) must demonstrate "that a class action

15   is superior to other available methods for fairly and efficiently adjudicating the controversy."

16   Pertinent to that determination is: (a) the class members' interests in individually controlling

17   the prosecution or defense of separate actions; (b) the extent and nature of any litigation

18   concerning the controversy already begun by or against class members; (c) the desirability or

19   undesirability of concentrating the litigation of the claims in the particular forum; and (d) the

20   likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3).

21    There does not appear to be a strong interest for class members in individually

22   controlling the prosecution of separate actions, particularly given that the alleged damages of

23   each member will be small.  This element appears to be in Plaintiff's favor.

24    There does not appear to be other litigation concerning the controversy besides one

25   small claims court action.  Some courts have found the lack of any other litigation on the

26   subject matter to counsel against a class action.  See Gartin, 245 F.R.D. 429, 441-442

27   (finding that when only two individual cases filed this element not met); Zinser v. Accufix

28   Research Inst. Inc., 253 F.3d 1180, 1191 (9th Cir. 2001), amended and superseded on other

18

United States District Court
For the Northern District of California

1   grounds, 273 F.3d 1266 (denying class certification partly because although thousands of

2   patients were implanted with the medical device at issue, only nine individual lawsuits were

3   pending). Thus, this elements is not in Plaintiff's favor.

4        There does not seem to be much reason for the claims to be here rather than in another

5   forum besides Plaintiff Badella's residence in California, though the presence of some

6   Defendants in California is also helpful. On the other hand, the T&C does state claims

7   should be brought in Florida, or Cyprus.

8        Finally, the manageability issue may present problems. The Plaintiff's lack of any

9   suggestions, much less a plan, as to how the Court should manage this large proposed

10   nationwide class action is troubling. This issue may become magnified as well if many

11   different state laws were found to apply. Moreover, issues of damages and motivation may

12   create manageability concerns not addressed by Plaintiffs. See Gartin, 245 F.R.D. 429, 441

13   (finding lack of a plan a manageability issue).

14        There may be other arguments against superiority. See Haley v. Medtronic, Inc., 169

15   F.R.D. 643, 651-52 (C.D. Cal. 1996) ("even if seventy-five percent of the issues are common

16   questions – assuming seventy-five percent is enough to establish "predominance" – if the

17   other twenty-five percent that are individual in nature are significant enough, class action

18   treatment might not be 'superior' after all."); Weigele, 267 F.R.D. at 625 (conceding that

19   "denying certification eliminates some efficiencies of class treatment" such as taking

20   depositions of company executives, retaining experts, and compelling discovery of company

21   policies and procedures, but concluding that "the substantial difficulties" involved in calling

22   a large number of testifying class members "make class treatment inferior"). Given all the

23   above considerations, and the lack of much helpful evidence provided by Plaintiffs at this

24   point, along with the lack of any type of trial plan or procedure, it is not clear to the Court

25   that a class action would be superior.

26   //

27   //

28   //

19

**IV.    CONCLUSION**

For the foregoing reasons, the Court finds that certification under Rule 23(b)(3) is not warranted, and DENIES the Motion to Certify the class without prejudice.

**IT IS SO ORDERED.**

Dated: November 4, 2011

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

20